**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jim Juichang CHEN, aka Jui Chang Chen; Lucy Chen, aka Hseuh Ju Yang; Mike Juiming Chen, aka Jui Ming Chen; Kelly Paokui Chen, aka Pao Kui Chen; Li Yuen Shing, aka Chinmg Lu, aka Lu Chin Sheng, Defendants–Appellees.**

Nos. 92–10243, 92–10244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 15, 1992.

Decided Nov. 5, 1992.

Rory K. Little, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Peter Goodman, and Scott A. Sugarman, Sugarman & Cannon, San Francisco, Cal., for defendants-appellees.

Before WALLACE, Chief Judge, CHOY and POOLE, Circuit Judges.

WALLACE, Chief Judge:

The government appeals from the district court's order suppressing all of the evidence obtained from the government's video surveillance of a warehouse containing a shipment of heroin. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3731. We reverse and remand.

I

On May 20, 1991, United States Customs agents in Oakland, California searched two containers from a ship that had arrived from Taiwan, and discovered over 1,000 pounds of heroin. The containers were destined for a rented warehouse. The agents removed most of the heroin, but decided to allow a controlled delivery of the remaining portion of the shipment.

In order to observe the heroin shipment once it was placed in the warehouse, the agents requested and obtained a warrant authorizing the installation of a video camera. During the night of May 21, the agents entered the warehouse and installed two cameras, camera 1 and camera 2. However, the agents discovered that due to technical difficulties both cameras could not be operated simultaneously, and the agents removed camera 2 before they left the warehouse.

During the night of May 29, the agents installed video camera 3. Camera 3 was located inside the warehouse, but was used to film an area outside the building. Once Assistant United States Attorney Kennedy, who was assisting with the investigation, learned that camera 3 had been installed, he ordered it to be disconnected.

On June 20, Jim Chen, Lucy Chen, Kelly Chen, and Li Yuen Shing began opening the boxes in the warehouse. Before completing this task, however, they noticed video camera 1. The agents then executed a previously obtained search warrant for the warehouse and arrested these four defendants. Mike Chen was subsequently arrested in Massachusetts.

Mike Chen, Jim Chen, Lucy Chen, Kelly Chen, and Li Yuen Shing (the Chen defendants) were indicted for a number of offenses, including conspiracy to import heroin and importation of more than 1,000 pounds of heroin. The Chen defendants filed motions to suppress the video surveillance evidence. The district court relied on *United States v. Koyomejian,* 946 F.2d 1450, 1453–60 (9th Cir.1991) (*Koyomejian I*), and suppressed all of the video surveillance evidence because the government failed to comply with the technical procedures specified in 18 U.S.C. §§ 2510–21 (the wiretap statute). The district court also held that the suppression of all of the video surveillance evidence was justified because the government flagrantly disregarded the terms of the warrant.

II

We review the lawfulness of a search de novo. *United States v. Ayers,* 924 F.2d 1468, 1479 (9th Cir.1991) (*Ayers*). Whether video surveillance is governed by the wiretap statute is a question of law subject to de novo review. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). However, the standard for reviewing a district court's determination that government agents flagrantly disregarded the terms of a warrant is unclear. The government contends that the district court's ruling should be reviewed de novo. *See Ayers,* 924 F.2d at 1480 (scope of whether government agents exceed search is reviewed de novo). The Chen defendants argue that the district court's flagrant disregard ruling is fact intensive and should be reviewed only for clear error. *See United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988) (*Medlin*) (district court's determination that the violations were "not mitigated by practical considerations" and that the

search was a "fishing expedition" is reviewed for clear error). However, it is unnecessary for us to resolve this issue because even if we assume that the district court's decision can be reviewed only for clear error, reversal is necessary in this case.

### III

■ The district court relied on *Koyomejian I*, 946 F.2d at 1453–60, which held that video surveillance is governed by the wiretap statute, and suppressed the video evidence because the government failed to comply with the requirements of the statute. Subsequently, however, an en banc court rejected the holding of *Koyomejian I*, and concluded that video surveillance is not regulated by the wiretap statute. *United States v. Koyomejian*, 970 F.2d 536, 537 (9th Cir.1992) (en banc) (*Koyomejian II*). Thus, the district court erred by suppressing the evidence based on the wiretap statute.

We do not reach the question of whether the search in this case meets the Fourth Amendment standards established by *Koyomejian II*. On remand, the district court may address this question in the first instance, if the district court determines that it has been properly raised. *Id.* at 541–42. The district court may also consider whether any alleged violation of these standards is excused by the good faith exception established in *United States v. Leon*, 468 U.S. 897, 925–26, 104 S.Ct. 3405, 3421–22, 82 L.Ed.2d 677 (1984).

### IV

■ The Chen defendants also moved to suppress the video surveillance evidence because the agents violated the terms of the warrant by installing camera 2 and camera 3. The Chen defendants argued that the warrant authorized the installation of only one video camera, but the agents installed two additional cameras. The government agreed to suppress the evidence that was obtained from camera 3 and pointed out that no evidence was filmed by camera 2. The district court, however, concluded that this remedy was insufficient

and held that the illegal installation of camera 2 and camera 3 justified the suppression of all of the video surveillance evidence, including the evidence obtained from camera 1. The court reasoned that the suppression should not be limited to the evidence illegally seized because the agents flagrantly disregarded the terms of the warrant by installing more than one camera.

### A.

■ Ordinarily, only evidence that is obtained in violation of a warrant is suppressed. *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir.1982) (*Tamura*). However, in cases where there is a "flagrant disregard" for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation. *Medlin*, 842 F.2d at 1199.

■ This extraordinary remedy should be used only when the violations of the warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search. *See id.; Tamura*, 694 F.2d at 597. For example, we ordered wholesale suppression in *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978) (*Rettig*). There, the government agents were issued a warrant to search for evidence of marijuana possession, but they ignored the limitations of the warrant and searched for evidence of a cocaine conspiracy despite the fact that the government had earlier been denied a warrant to conduct just such a search. *Id.* at 420–22. In contrast, we have refused to suppress all of the evidence where the agents who exceeded their authority under the warrant "were motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing.'" *Tamura*, 694 F.2d at 597. Thus, wholesale suppression is appropriate under the flagrant disregard standard only when the officers transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing.

## B.

We start our analysis by pointing out that the district court erred in balancing the interests at stake. The district court properly determined that video surveillance is very intrusive, and that the Chen defendants are entitled to protection under the Fourth Amendment. *See United States v. Mesa–Rincon,* 911 F.2d 1433, 1436–37, 1442 (10th Cir.1990). The district court also correctly pointed out that a business is entitled to less protection from video surveillance than an individual's private home. *Id.* at 1443. The district court, however, erred by holding that this lessened expectation of privacy is offset because this was merely a "mercantile crime" and there was no immediate threat of violence or harm to persons or property.

Drug crimes are very serious and represent one of the greatest threats to our society. Drug conspiracies are often well-planned, and video and audio surveillance may be necessary because the conspirators often carefully conceal their activities and identities by using code words and other techniques. *See United States v. Abascal,* 564 F.2d 821, 827 (9th Cir.1977) (*Abascal*), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 and 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978). Therefore, in balancing the interests, the fact that this is a drug crime does not weigh in favor of suppression.

The district court also erred by concluding that the installation of camera 2 supports a finding that there has been a flagrant disregard. The district court correctly pointed out that the warrant authorized the agents to install only "a video camera," and the agents initially installed two cameras. Moreover, the installation of the extra camera may have been caused in part because the agents installing the cameras did not read or fully understand the terms of the warrant.

These facts, however, do not indicate that there was a flagrant disregard justifying the suppression of all of the evidence. *See United States v. Whitten,* 706 F.2d 1000, 1009–10 (9th Cir.1983) (no flagrant disregard although agents did not read or fully understand the terms of the warrant), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). The agents did not install the extra camera in order to engage in indiscriminate fishing and record activities not covered by the warrant. They installed the camera because they discovered that one camera could not film the entire warehouse and fulfill the purposes of the surveillance warrant. Indeed, the installation of this camera was only a de minimis intrusion on the Chen defendants' rights. Camera 2 was removed before the agents left the warehouse, and the camera was never used to record any evidence. Additionally, contrary to the clearly erroneous finding of the district court, the installation of the camera was disclosed to the monitoring judges.

The installation of camera 2 did not transform this search into a general search, and this is clearly a case where the agents were "motivated by considerations of practicality rather than by a desire to engage in indiscriminate 'fishing.'" *Tamura,* 694 F.2d at 597. Thus, it was clear error for the district court to conclude that the installation of camera 2 supports a finding that there was a flagrant disregard justifying wholesale suppression.

The district court also clearly erred by relying on camera 3 in determining that there was a flagrant disregard. Installation and operation of camera 3 does not show that the agents have "engage[d] in indiscriminate 'fishing'" and so exceeded the limitations of the warrant that the entire surveillance operation has been transformed into an impermissible general search. *See Tamura,* 694 F.2d at 597; *Rettig,* 589 F.2d at 423. The district court expressly recognized that this alleged violation was mitigated by the fact that the camera was focused only on the area *outside* the warehouse. Additionally, when Kennedy learned that camera 3 had been installed and that the camera was monitoring the area outside the warehouse, he caused the agents to terminate use of the camera. Kennedy also notified the district court in a timely fashion of this alleged violation of the warrant.

The government has agreed to suppress all of the fruits of camera 3, and, under the facts of this case, this is a sufficient remedy. Thus, the district court clearly erred by determining that the installation and use of camera 3 justified suppression of evidence that was not tainted by the camera's operation.

## C.

Although the installation of camera 2 and camera 3 alone does not justify a flagrant disregard finding, we must also examine the other factors considered by the district court in making its flagrant disregard decision. The district court stated that it was not holding that any one factor was determinative. We assume that by this statement, the court was focusing on additional factors as circumstances that aggravated the alleged illegal installation of the additional cameras.

■ One factor considered by the district court was the government's minimization efforts. "Minimization requires that the government adopt reasonable measures to reduce the interception of [activities] unrelated to the criminal activity under investigation to a practical minimum while permitting the government to pursue legitimate investigation." *United States v. Torres*, 908 F.2d 1417, 1423 (9th Cir.) (*Torres*), *cert. denied*, — U.S. —, 111 S.Ct. 272, 112 L.Ed.2d 228 and — U.S. —, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990). "The standard of minimization is reasonableness." *Abascal*, 564 F.2d at 827. The district court concluded that the minimization briefings were deficient because they focused on audio surveillance rather than video surveillance, and Agent Andreozzi, one of the agents in charge of the surveillance, was not briefed on the minimization of the video surveillance. The district court also pointed out that the cameras were monitored continuously for a period of time.

The agents, however, did take some steps to minimize the video monitoring. On May 22, Kennedy read the magistrate's order to Mallory, the monitoring agent, and gave her instructions regarding minimiza-

tion. Kennedy also later conducted a more formal minimization briefing. Although this briefing may have emphasized the audio surveillance, Kennedy also repeated his instructions regarding minimization of the video surveillance pursuant to the magistrate's order. Kennedy informed the monitoring agents that if they had any questions they could contact him at any time, and he provided them with his home and office telephone numbers. *See Torres*, 908 F.2d at 1423 (federal agent available on a 24–hour basis for consultation). Agent Andreozzi was not present during these minimization briefings because he was never scheduled to monitor the audio or video surveillance. The district court failed to make adequate findings indicating why these efforts were insufficient to meet the reasonableness standard and whether this alleged violation transformed the search into an impermissible general search.

The agents also apparently allowed the cameras to operate continuously for a certain period of time. However, on June 6, Kennedy filed a periodic report that informed the district court of the continuous surveillance. At Kennedy's instruction, the agents stopped this practice and thereafter operated the camera only when someone was in the warehouse, plus regular spot checks. Kennedy stated that the video observations of persons in the warehouse had not been minimized because their visible actions appeared to be related to the pallets that were the subject of the surveillance order. *Cf. Abascal*, 564 F.2d at 827 (holding that the recording of all monitored calls is not always a violation of the minimization requirement). The district court has not made adequate findings on the scope of this violation that indicate which specific actions or persons were recorded that should not have been observed.

■ The district court's minimization findings are not sufficient to support its flagrant disregard finding. The district court failed to explore the scope of the alleged minimization violation adequately or to indicate why the agents' actions transformed this into a general search. Thus, the district court erred by holding

there were minimization violations without making further findings.

We, however, do not foreclose the possibility that the suppression of some of the evidence may be appropriate. On remand, the district court may make additional findings and hold additional hearings, if necessary, in order to determine whether the government's minimization efforts were constitutionally sufficient. The district court should then carefully examine the scope of any alleged minimization violations and determine what evidence may appropriately be suppressed.

 The district court also relied on the agents' failure to secure approval of the Attorney General or his special designate before the video surveillance was conducted. The warrant did not require that approval be obtained, and thus this factor does not indicate that the agents flagrantly disregarded the terms of the warrant. Moreover, *Koyomejian II* held that video surveillance is not subject to the technical requirements of the wiretap statute, such as Attorney General approval. *See Koyomejian II*, 970 F.2d at 542; *accord United States v. Cuevas–Sanchez*, 821 F.2d 248, 251–52 (5th Cir.1987). Thus, the district court could not properly rely on this factor.

 The district court also relied on the government's failure to utilize conventional surveillance techniques. The issuing judge adopted the affidavit's explanation of why conventional methods would not be successful, *see United States v. Commito*, 918 F.2d 95, 98 (9th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 224, 116 L.Ed.2d 181 (1991), and the warrant did not require that the agents engage in any conventional surveillance before the video surveillance could begin. Thus, the agents' failure to use conventional methods is not a violation of the warrant and does not support a finding of flagrant disregard.

The district court also relied on the fact that the warrant only required that progress reports be made every ten days. This factor does not indicate that the agents flagrantly disregarded the terms of the warrant, and the district court conceded that this factor is not of any "great significance in and of itself." Thus, this factor also does not weigh in favor of suppression.

 The district court also considered the fact that the warrants allegedly contained no limit on the number of surreptitious entries. This is not an error by the agents in complying with the terms of the warrant and does not support a flagrant disregard finding. There is no requirement that the warrant include a "specific authorization to enter covertly the premises described in the order." *Dalia v. United States*, 441 U.S. 238, 258–59, 99 S.Ct. 1682, 1694, 60 L.Ed.2d 177 (1979) (footnote omitted). This does not mean that agents can ignore the rights of others. The agents must limit their entry in a reasonable manner. *Id.* at 258, 99 S.Ct. at 1693. But, the district judge relied solely on the lack of sufficient limitations in the warrant, which he could not do to support a flagrant disregard finding.

### D.

The standard for determining whether there has been a flagrant disregard justifying wholesale suppression is whether the agents have disregarded the terms of the warrant to such an extent that the search has been transformed into an impermissible general search. *See Tamura*, 694 F.2d at 597; *Rettig*, 589 F.2d at 423. As explained above, none of the factors relied upon by the district judge justify a finding that this search has been transformed into a general search. Moreover, even when all of the factors are considered cumulatively, it is clear that the agents in this case were not "engag[ing] in indiscriminate 'fishing,'" and the search was not transformed into an impermissible general search. *Tamura*, 694 F.2d at 597. The district court clearly erred in determining that there was a flagrant disregard of the terms of the warrant that justifies the wholesale suppression of all of the video evidence. We need not reach the government's other argu-

ments that wholesale suppression was inappropriate in this case.

REVERSED AND REMANDED.