**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Richard MITTELMAN; Weldon Ray**
**Reeves, Defendants–Appellees.**

No. 92–10623.

United States Court of Appeals,
Ninth Circuit.

Submitted July 14, 1993.*

Decided July 21, 1993.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Donald W. Searles, Asst. U.S. Atty., Sacramento, CA, for plaintiff-appellant.

Dale A. Drozd, Blackmon & Drozd, Sacramento, CA, for defendant-appellee Reeves.

Before: WALLACE, Chief Judge, D.W. NELSON and O'SCANNLAIN, Circuit Judges.

WALLACE, Chief Judge:

The government appeals from the district court's order suppressing all evidence seized during a warranted search of Reeves's law office. The government argues that the district court clearly erred in finding both that Federal Bureau of Investigation Agent Pereira (Agent) made false statements to the federal magistrate who issued the warrant and that the resulting search exceeded the scope of the warrant. The government also argues that the court erred in suppressing all evidence seized during the search, including evidence within the scope of the warrant. The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction over this timely appeal pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291. We vacate the district court's order and remand.

I

In November 1990, the Agent participated in a search of a residence belonging to Mittelman, who was suspected of bank and bankruptcy fraud. Reeves was Mittelman's attorney. Based on the evidence found at Mittelman's, the Agent sought a warrant from a federal magistrate to search Reeves's law office. The Agent informed the magistrate that probable cause existed to believe that the office contained evidence of Reeves's participation in bankruptcy fraud and a conspiracy to commit bankruptcy fraud.

The Agent also assured the magistrate, in his affidavit accompanying the warrant application, that he was aware of the confidential interests at stake in a law office search, and that he would follow certain procedures designed to safeguard those interests: the procedures for searching and seizing documents described in the American Law Institute's Model Code of Pre–Arraignment Procedure (ALI procedures), which we suggested but did not require the government follow in

*United States v. Tamura,* 694 F.2d 591, 595–96 (9th Cir.1982) (*Tamura*). The magistrate issued the warrant, and the Agent and several other officers searched Reeves's office that same day.

Based on information gathered in the searches of Mittelman's residence and Reeves's office, the government charged Mittelman and Reeves with conspiracy to commit bankruptcy fraud and various related substantive offenses. Reeves and Mittelman subsequently moved to suppress the evidence seized during the search of Reeves's law office. They sought suppression on the ground that the Agent made material misstatements in applying for the warrant, justifying an evidentiary hearing and remedy pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (*Franks* ), and also on the ground that the search was overbroad and abusive.

The district court denied Reeves and Mittelman's *Franks* motion, holding that even if the material misstatements were known to the magistrate, a reasonable magistrate would still have issued the warrant. The court subsequently conducted a hearing to determine whether the search was overbroad. During that hearing, the court found that the Agent did not follow the ALI procedures as promised in his affidavit. According to the court, the Agent and other officers conducting the search examined the entire contents of files, failed to follow proper sealing procedures, and perused the indexes of computer files and seized a number of computer disks. Testifying at the hearing, the Agent admitted that he had never read the ALI procedures. He also related that, one week prior to the search of Reeves's office, he had testified at another criminal proceeding involving Mittelman where he was cross-examined by Reeves. At the close of the hearing, Reeves and Mittelman sought reconsideration of their *Franks* motion.

The district court found that the Agent's failure to relate his earlier testimony in Mittelman's case and his misstatement regarding his familiarity with ALI procedures did not bear on the issue of probable cause to conduct the search. Those facts, the court concluded, were "relevant only to the scope of the warrant and the manner of execution." Nevertheless, the court found that *Franks* was applicable to this case. Drawing on an analogy from wiretap cases, the district court held that

> where a defendant is able to make a prima facie showing that an affidavit supporting a request for a search warrant of a law office containing criminal files includes wilfully false material [statements] and/or omissions bearing upon how that search will be conducted relative to protection of those values, a *Franks*-like hearing is appropriate. If, upon the hearing, the court finds that the affidavit does contain such false material and that the search was not conducted in accordance with the reasonable expectations of the magistrate derived from those representations, suppression should follow.

Applying this holding to the facts, the court found that the Agent's search did not conform to the ALI procedures. The court further found that the Agent's affidavit contained a reckless or intentional misstatement regarding his familiarity with ALI procedures. The court then concluded that this misrepresentation "certainly lulled the magistrate into concluding that additional special precautions were not necessary. Given that the result of these misrepresentations was a search inconsistent with the magistrate's reasonable expectations premised upon them, suppression appears appropriate." The court suppressed all of the evidence seized during the search, and the government appealed. Mittelman has since pleaded guilty to the bankruptcy conspiracy and thus is not a party to this appeal.

 We review de novo the lawfulness of a search. *United States v. Chen,* 979 F.2d 714, 716 (9th Cir.1992) (*Chen* ). Although we ordinarily review the district court's ruling as to the existence of probable cause for clear error, we review de novo the district court's review of allegedly false statements and their effect on probable cause. *United States v. Elliott,* 893 F.2d 220, 222 (9th Cir.) (*Elliott* ), *amended,* 904 F.2d 25 (9th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990). The district court's factual findings underlying its decision to suppress evidence

are reviewed for clear error, including its findings regarding whether a government agent made intentional or reckless misstatements when applying for a search warrant. *Id.*

## II

The government devotes a large portion of its brief to contesting the factual findings of the district court. The government contends that the court clearly erred in finding that the Agent made intentional or reckless material misstatements or omissions to the magistrate. The government also disputes the court's finding that the Agent and others exceeded the scope of the search warrant and generally conducted the search with little regard for the privacy interests at stake. Based upon the record before us, the district court's findings are not clearly erroneous.

## III

The government also challenges, on two grounds, the district court's wholesale suppression of evidence. First, the government argues that neither a *Franks* hearing nor suppression is required where material misstatements or omissions do not bear on the issue of probable cause. Second, the government contends that even if the search exceeded the terms of the warrant, the proper remedy is suppression only of that evidence seized outside of the scope of the warrant.

### A.

■ To determine whether a *Franks* hearing is required when intentional or reckless misstatements or omissions by officers are shown, the reviewing court should set aside the false assertions and determine whether the remaining evidence is sufficient to establish probable cause. *Elliott,* 893 F.2d at 222–23. The district court conducted this type of review in response to Reeves's *Franks* motion and held that a hearing was not warranted. At a subsequent hearing to determine whether the search was overbroad, the court discovered that the Agent had made additional misrepresentations and omissions, but it concluded that these did not bear on the issue of probable cause. In light of its con-

clusion, the court should have held again that a *Franks* hearing was not warranted.

■ Instead, the court determined that the *Franks* doctrine should be applied to situations, such as law office searches, "where false affidavits have supported invasions of privacy interests which are deemed especially sensitive ... even when the false material is not relevant to probable cause determinations." In support of this theory, the court drew an analogy to wiretap cases, in which we have applied *Franks* to the issue of whether a wiretap was necessary. *See United States v. Ippolito,* 774 F.2d 1482 (9th Cir.1985) (*Ippolito*). In those cases, we review any misstatements or omissions to determine whether the judge would have found the use of a wiretap necessary absent those false statements. *Id.* at 1485.

There are at least two reasons why the analogy to the wiretap cases is inappropriate here. First, a showing of necessity is a statutory requirement for the issuance of a wiretap authorization order. *See id.* (necessity is a "congressionally warranted *requirement*"). By contrast, necessity is not a statutory requirement to obtain a warrant to search a law office. The Privacy Protection Act, 42 U.S.C. § 2000aa–11(a)(3), demands a general "recognition of special concern for privacy interests in cases in which a search ... would intrude upon a known confidential relationship such as that which may exist between ... lawyer and client." This Act, however, does not apply to criminal suspects, 42 U.S.C. § 2000aa–11(a), nor does it require any showing greater than probable cause in order to secure a warrant for a search which might intrude upon confidential relationships. In addition, the federal regulations promulgated pursuant to the Act do not create any additional burdens to securing a warrant where, as here, the target of the warrant is "[a] suspect in the criminal offense to which the materials sought ... relate." 28 C.F.R. § 59.2(b)(1) (1992).

Reeves correctly points out that we have held that the Fourth Amendment requires a showing of necessity before a video surveillance may be authorized. *See United States v. Koyomejian,* 970 F.2d 536, 542 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 113 S.Ct. 617, 121 L.Ed.2d 550 (1992). That holding, however, was based on the similarity between wiretaps and video surveillance.

*See id.* The search of a law office is obviously more similar to traditional office searches than it is to electronic surveillance. The reasoning in *Koyomejian*, therefore, does not apply here, and we see no constitutional basis for requiring a showing beyond probable cause in order to obtain a warrant to search a law office. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 554, 98 S.Ct. 1970, 1975, 56 L.Ed.2d 525 (1978) ("valid warrants may be issued to search *any* property, whether or not occupied by a third party, at which there is probable cause to believe that fruits, instrumentalities, or evidence of a crime will be found").

Second, the wiretap analogy does not support extending *Franks* to misstatements regarding the *manner* in which a search will be conducted. *Franks* is amenable to application in the wiretap context because inquiring into necessity and inquiring into probable cause are different versions of the same question. Both focus on whether the wiretap or search is justified in light of the privacy interests which will be affected and the evidence expected to be obtained. Misstatements that bear on probable cause or necessity, therefore, affect the determination of whether the warrant or wiretap should have issued. *See Ippolito,* 774 F.2d at 1485.

■ The misstatements here, by contrast, concerned how the search would be conducted. The analogy to the wiretap cases does not support applying *Franks* to judge such misstatements, because misstatements regarding the manner of a search do not bear on the issue of whether the search itself was justified. This distinction, between false statements bearing on whether a warrant should issue and those regarding how a search will be conducted, is evident in the rule we reaffirmed in *Ippolito:*

> [P]roof that law enforcement officials either lied or made reckless misstatements in affidavits to secure a warrant or order does not in and of itself invalidate that warrant or order, or compel suppression of evidence obtained upon its execution. But

false statements that are material in causing the warrant to issue will invalidate it. *Id.*

Here, the district court found that the Agent's false statements related exclusively to the manner in which the search was to be conducted. They did not relate at all to the issue of probable cause nor, by analogy, did they relate to the issue of necessity. Applying *Franks* was therefore inappropriate in this case where no one disputes that there was ample cause to conduct the search, and where the only dispute is over how that search was conducted. As there was no reason to apply *Franks,* there was no cause to order the suppression of all of the evidence seized during the search on the ground that the Agent misrepresented how the search would be conducted. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77 (suppression required when government agent makes false statement that is essential to the finding of probable cause).

### B.

■ We do not hold that there can be no remedy when a search exceeds the scope of the warrant, as the district court found occurred here. On the contrary, we recently reaffirmed the appropriate remedy for such situations in *Chen,* which we decided subsequent to the district court's order:

> Ordinarily, only evidence that is obtained in violation of a warrant is suppressed. However, in cases where there is a "flagrant disregard" for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation.
>
> This extraordinary remedy should be used only when the violations of the warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search.

979 F.2d at 717 (internal citations omitted); *see also United States v. Crozier,* 777 F.2d 1376, 1381 (9th Cir.1985) (holding that if agents have not flagrantly disregarded warrant, only items seized that "fall outside the scope of the warrant need be suppressed"); *Tamura,* 694 F.2d at 597 (exclusionary rule generally "does not require the suppression of evidence within the scope of a warrant simply because other items outside the scope of the warrant were unlawfully taken as well"). Although the district court found

that the government agents disregarded the terms of the search warrant and stated that the government's conduct "may be considered outrageous," the court did not determine whether the officers flagrantly disregarded the terms of the warrant.

Instead, out of solicitude for the privacy interests implicated by searches of law offices, the district court suppressed all of the evidence seized because it found that the Agent's misstatements led to a search "not conducted in accordance with the reasonable expectations of the magistrate derived from those [mis]representations." While we share the district court's concern for the privacy interests at stake, the method of protecting those interests was in error.

■ Law offices are not immune from search. *See In re Grand Jury Subpoenas Dated Dec. 10, 1987,* 926 F.2d 847, 855–58 (9th Cir.1991) (affirming denial of motion to return property seized from search of law office); *Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 959 (3d Cir.1984) (stating that a "search of a law office is not … *per se* unreasonable"). As the Second Circuit stated, and we agree:

> Although a law office search should be executed with special care to avoid unnecessary intrusion on attorney-client communications, it is nevertheless proper if there is reasonable cause to believe that the specific items are located on the property to be searched. … [A] criminal enterprise does not exempt itself from a search warrant by conducting its business and keeping its records in its lawyer's office.

*National City Trading Corp. v. United States,* 635 F.2d 1020, 1025–26 (2d Cir.1980) (internal quotation and citation omitted).

Thus, while we agree that special care should be taken when conducting a search of law offices, separate legal rules are not necessary for remedying such searches when they exceed the scope of the warrant. The remedies described in *Chen* and restated in

this opinion are fully applicable to law office searches, as they provide ample protection and relief. *Tamura* is an instructive example in this regard. After suggesting the use of procedures designed to protect privacy interests during document searches, we nonetheless applied the traditional remedy for searches which exceed the scope of the warrant: we first examined whether the government had engaged in "indiscriminate fishing," and having determined it did not, we concluded that suppression was required of only that evidence seized outside the scope of the warrant. 694 F.2d at 597.

We vacate the suppression order and remand to allow the district court to determine first whether the search of Reeves's law office amounted to an "impermissible general search." *Chen,* 979 F.2d at 717. If it did, suppressing all of the evidence seized during the search is appropriate. If the violations of the search warrant were not so extreme as to justify this extraordinary remedy, the district court should determine what evidence, if any, was seized in violation of the warrant and order the suppression of that evidence only. *See id.*

VACATED AND REMANDED.