**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

JOHN SEARS,
  *Defendant-Appellant.*

No. 03-10573

D.C. No.
CR-01-00070-MJJ

OPINION

Appeal from the United States District Court
for the Northern District of California
Martin J. Jenkins, District Judge, Presiding

Argued and Submitted
December 7, 2004—San Francisco, California

Filed June 20, 2005

Before: Alex Kozinski, William A. Fletcher, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge William A. Fletcher;
Dissent by Judge Kozinski

## COUNSEL

Amber S. Rosen, Office of the U.S. Attorney, San Jose, California, for the plaintiff-appellee.

Stuart D. Hanlon, San Francisco, California, for the defendant-appellant.

## OPINION

W. FLETCHER, Circuit Judge:

In this case, we must determine the proper remedy for a search pursuant to a warrant that, due to police error in preparing the document for distribution, contained eight words not reviewed by a neutral magistrate. The eight words were

"or nearby" (twice) and "but not limited to." It is undisputed that those words expanded the scope of the search and violated the particularity requirement of the Fourth Amendment. Defendant John Sears appeals the district court's decision to remedy this Fourth Amendment violation by suppressing only that evidence seized pursuant to the unreviewed portions of the warrant. We affirm. Because the Fourth Amendment violation was not flagrant, and the invalid portions of the warrants were relatively insignificant, we hold that blanket suppression was not required.

## I.  Background

On January 4, 2001, San Francisco Police Department ("SFPD") Officer Jon Kasper sought and received a warrant to search Sears's person, vehicles, residences, and related storage spaces for evidence of cocaine trafficking. The warrant referred to an attachment, Exhibit A, specifying the items the officers were authorized to seize.

In the version of the warrant approved by San Francisco Superior Court Judge Leonard Louie, Exhibit A follows Officer Kasper's statement of probable cause and begins at the bottom of page 6 of the search warrant and affidavit. Officer Kasper testified that he created Exhibit A by clicking on a file named "cocaine exhibit" and merging it with the file containing the rest of the search warrant. Officer Kasper further testified that, unbeknownst to him at the time he prepared the warrant for Judge Louie's approval, the police department computer contained multiple versions of Exhibit A. Judge Louie approved the warrant containing the December 1998 version of Exhibit A.

In the course of litigating Sears's March 6, 2002 motion to suppress cocaine seized in the subsequent search,[1] it was dis-

---

[1]Sears had filed an earlier motion to suppress on May 31, 2001. The first motion to suppress is not relevant to this appeal.

covered that the version of Exhibit A approved by Judge Louie was not the version of Exhibit A given to the searching officers. After receiving Judge Louie's approval, Officer Kasper prepared copies of the warrant for the search team. Officer Kasper testified that as a matter of standard SFPD practice, officers do not generally serve the statement of probable cause along with the rest of the search warrant. He also testified that because it was typical for the description of the items authorized for seizure (contained in Exhibit A) to be written on a separate page from the statement of probable cause, he sought to eliminate that part of the probable cause statement that spilled over to the first page of Exhibit A. He therefore printed out a fresh copy of Exhibit A on a separate sheet of paper instead of making copies of Exhibit A from the original set of papers signed by Judge Louie. Officer Kasper testified that in creating the fresh copy he inadvertently attached the July 1997 version of Exhibit A, rather than the December 1998 version approved by Judge Louie, to the warrant given to the search team.

The version of Exhibit A given to the search team differed from the version of Exhibit A actually approved by Judge Louie. Exhibit A, in the form given to the search team, authorized a search for

> [a]ll articles of personal property tending to establish and document sales of cocaine, consisting in part, of articles of personal property tending to establish the identity of persons in control of premises, vehicles, storage areas or containers located at, *or nearby,* or related to the subject premises where cocaine may be hidden. All vehicles, storage areas or containers located at, *or nearby,* or related to the subject premises where cocaine may be hidden; all articles of personal property tending to establish the location of such premises, vehicles, storage areas or containers where cocaine may be found or secreted, consisting of and including *but not limited to*, utility bills and

receipts, rent receipts, canceled mail envelopes and keys.

(Emphasis added.) The italicized phrases indicate language not included in the version of Exhibit A shown to and approved by Judge Louie. Except for the addition of the italicized phrases, the two versions of Exhibit A were identical. Officer Kasper testified that he did not learn that the two versions of Exhibit A differed until a few weeks prior to the July 31, 2002 evidentiary hearing on the discrepancies between the two attachments.

After preparing copies of the warrant, Officer Kasper conducted a search warrant briefing. At the briefing, he correctly informed the assembled officers that he had "a search warrant signed by the Honorable Judge Louie of the San Francisco Superior Court" for "the person of John Sears" and "his residences at 7 Maddux and 84 Latona." Officer Kasper was not present during the search of Sears's room at 7 Maddux, which turned up currency, crack and powder cocaine, and narcotics packaging and paraphernalia. On January 5, 2001, Officer Kasper filed a return to search warrant form. In this form, he recorded the locations searched as "84 Latona" and "7 Maddux," and noted that "all items [were] seized from 7 Maddux." No items were seized pursuant to the "or nearby" or "but not limited to" language of Exhibit A.

When Sears discovered the discrepancies between the warrant as issued and the warrant as executed, he moved to suppress "for an illegal search based on a warrant that was never approved by the judge." After a hearing, the district court found Officer Kasper's account credible. The district court also stated that the wrong version of Exhibit A was attached to the warrant and taken to the site of the search "by mistake."

Based on *New York v. Harris*, 495 U.S. 14 (1990), and *United States v. Clark*, 31 F.3d 831 (9th Cir. 1994), the district court ultimately held that "only those items seized pursu-

ant to the overbroad part of the warrant would be subject to suppression." Because no evidence was seized pursuant to the overbroad parts of the warrant, the district court effectively denied Sears's motion to suppress. Sears pled guilty to possession of cocaine base and cocaine powder in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal the district court's ruling on his suppression motion.

We review a motion to suppress de novo. *United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002). We review the district court's underlying factual findings for clear error. *Id.*

## II.   Analysis

**[1]** The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S Const. amend. IV. The Supreme Court has held that "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). We have "found warrants to lack sufficient particularity when they have failed to specify the items to be seized, or the location to be searched." *United States v. Hotal*, 143 F.3d 1223, 1226 (9th Cir. 1998) (citation omitted).

The particularity requirement serves several purposes. It prevents "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). It also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh*, 540 U.S. at 561 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)); *see also Stanford v. Texas*, 379 U.S. 476, 485 (1965) (stating that particularity ensures that "nothing is left to the discretion of the officer executing the warrant") (citation and internal quotation marks omitted).

We have noted that "the absence of a sufficiently particular warrant increase[s] the likelihood and degree of confrontation" between the searching officers and the individuals whose property is subject to search. *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002) (as amended), *aff'd*, *Groh v. Ramirez*, 540 U.S. 551 (2004). Finally, an invalid warrant deprives individuals "of the means to be on the lookout and to challenge officers who might have exceeded the limits imposed by the magistrate." *Id.*

**[2]** The government concedes that the changes to Exhibit A after the warrant was approved by Judge Louie violated the Fourth Amendment's particularity requirement. However, what is at issue in this appeal is not the violation, but the remedy. The parties agree that the exclusionary rule should apply, but disagree as to its scope. The "prime purpose of the exclusionary rule is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Illinois v. Krull*, 480 U.S. 340, 347 (1987) (internal quotation marks omitted). The Supreme Court has instructed:

> As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced. Thus, in various circumstances, the Court has examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process.

*Id.* In the interest of deterrence, "evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.'" *Id.* at 348-49 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)); *see also United States v. Leon*, 468

U.S. 897, 918 (1984) ("[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.").

**[3]** Based on the Supreme Court's decision in *Krull*, we have set forth three factors that determine whether the exclusionary rule should be applied in a particular case:

> (1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant deterrent effect upon the source of the error.

*United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988) (internal citation and quotation marks omitted). Suppression is not appropriate if "the incremental deterrent value would be minimal." *New York v. Harris*, 495 U.S. 14, 20 (1990).

**[4]** The unusual facts of this case indicate that the deterrent value of wholesale suppression would be minimal. We accept the district court's factual finding that Officer Kasper did not deliberately exchange a broader version of Exhibit A for the version approved by Judge Louie. While requiring suppression of all the evidence seized in this search would likely make police officers more careful in preparing, printing, and photocopying warrants, we believe that in this case the incremental deterrent effect would be outweighed by "the costs of withholding reliable information from the truth-seeking process." It is undisputed that probable cause existed for the authorized portions of the warrant. Further, there is no evidence that Officer Kasper intended to "ignore or subvert the Fourth Amendment."

Sears suggests that by replacing Exhibit A with a freshly printed copy, Officer Kasper violated the Fourth Amendment requirement that a warrant be approved by the "objective mind of a neutral magistrate." *United States v. Gantt*, 194 F.3d 987, 991 (9th Cir. 1999) (citation and internal quotation marks omitted). Sears states that "[i]t is simply indisputable that the list of items seized attached by the police to the warrant had never been seen, much less authorized, by any judge." He also contends that total suppression would give police an incentive to "preserve the integrity of the original search warrant documents reviewed and approved by the magistrate."

Although we agree that police officers should handle search warrant documents with care, Sears's emphasis on the integrity of the original search warrant documents is misplaced. We are certain that there would have been no Fourth Amendment violation had the printout of Exhibit A been identical to the version approved by Judge Louie, just as we are certain that photocopies of warrants are acceptable, indeed indispensable, aids to searching officers. Sears argues that Officer Kasper's actions "removed the judge from the warrant review process." This is not really true. While Judge Louie had not seen the actual piece of paper that the searching officers took to Sears's residence, he had in fact authorized a search based on probable cause. The search authorized by Judge Louie was identical to the search specified in the new Exhibit A with the exception of the added words "or nearby," "or nearby," and "but not limited to."

**[5]** Partial suppression is proper under this circuit's doctrine of severance, which allows a court "to strike from a warrant those portions that are invalid and preserve those portions that satisfy the fourth amendment." *United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984). Severance means that "[o]nly those articles seized pursuant to the invalid portions need be suppressed." *Id.*; *see also United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) (as amended). We

have previously allowed severance when a warrant lacked particularity because of some unduly broad language in the warrant. In *United States v. Clark*, 31 F.3d 831 (9th Cir. 1994), the warrant authorized a search for "narcotic controlled substances, drug paraphernalia, marijuana cultivation equipment, instructions, notes, cultivation magazines, currency, documents, and records and *fruits and instrumentalities of [a] violation of Title 21, U.S.C. § 841(a)(1)."* *Id.* at 836. We held that the italicized language was overbroad and therefore rendered the warrant partially invalid under the Fourth Amendment. *Id*. To remedy the violation, we remanded to the district court with instructions to suppress evidence obtained under the overbroad portion of the warrant. We specifically instructed, however, that "[t]he court need suppress . . . only those items seized pursuant to the invalid portion of a search warrant." *Id.*

Total suppression, on the other hand, is appropriate when a warrant is wholly lacking in particularity. For instance, in *United States v. Grubbs*, 377 F.3d 1072 (9th Cir. 2004), we held that the particularity requirement was not met when an anticipatory search warrant failed to specify its triggering event, and a potentially curative affidavit was not presented to the persons subject to the search. *Id.* at 1078-79. Because we found that the officers "in effect, conducted a warrantless search," we held that "*all* evidence obtained during that search . . . must be suppressed." *Id.* at 1079; *see also Hotal*, 143 F.3d at 1228 n.7 (holding that wholesale suppression was appropriate when an anticipatory search warrant failed to identify its triggering event because the deficient warrant would not have justified entry into the residence "in the first place").

We have also used total suppression as a remedy in other cases involving warrants with serious particularity defects. In *United States v. McGrew*, 122 F.3d 847 (9th Cir. 1997), we reversed the defendant's conviction because we found that a warrant that failed to specify any type of criminal activity sus-

pected or any type of evidence sought "lacked the requisite — indeed, any — particularity." *Id.* at 850. The warrant in *McGrew* expressly incorporated a curative affidavit, but there was no evidence showing that the affidavit accompanied the warrant or was presented to the defendant during the search. *Id.* at 849. Similarly, in *United States v. Van Damme*, 48 F.3d 461 (9th Cir. 1995), the search warrant described the places to be searched and referred to "ATTACHMENT #1" for the list of items to be seized. *Id.* at 465. While the magistrate had reviewed Attachment #1, the police officer failed to make photocopies of the attachment to staple to the copies of the warrant given to the searching officers. *Id.* at 466. We held that this mistake did not constitute a mere "technical violation." *Id.* Rather, we held that because "the officers had no document telling them what to take, and Van Damme could look at no document specifying what the officers could take," the error amounted to "a transfer of power to limit the search from the neutral magistrate, where the Founding Fathers put it, to the police." *Id.* Nevertheless, we concluded that because the warrant issued on probable cause and adequately described the places to be searched, evidence seized because it had been in "plain view" need not be suppressed. *Id.* at 466-67.

**[6]** The doctrine of severance requires that "identifiable portions of the warrant be sufficiently specific and particular to support severance." *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986). In *Spilotro*, we found it significant that the items were not "set forth in textually severable portions." *Id.* at 968. Severance was also improper in the case of a warrant where "even the most specific descriptions (checks, journals, ledgers, etc.) [were] fairly general" and contained no time or subject matter limitations. *United States v. Cardwell*, 680 F.2d 75, 78-79 (9th Cir. 1982). By contrast, the invalid portions of the warrant for the search of Sears's residences are severable. Aside from the language that was never reviewed by Judge Louie, Exhibit A contains specific descriptions of cocaine and items associated with cocaine trafficking.

Although the items to be seized are not set forth in separate paragraphs, it is feasible to excise the eight offending words — two instances of "or nearby" and the phrase "but not limited to" — that render the warrant overbroad.

**[7]** We also take into account the relative size of the valid and invalid portions of the warrant in determining whether severance is appropriate. In *Spilotro*, we declined to sever and permit seizure of items that "were only a relatively insignificant part of the sweeping search for evidence of any violation" of thirteen enumerated statutes. *Id.* at 967. Yet severance was "practicable" when "only one of thirteen descriptions" was insufficiently particularized. *Gomez-Soto*, 723 F.2d at 654. We have also held that severance is appropriate when search warrants were overbroad as to "only nine of the twenty-two persons or entities named," and "documents of the persons or entities for which there was probable cause constituted the focus, and the vast majority, of the files searched." *In re Grand Jury Subpoenas Dated December 10, 1987*, 926 F.2d 847, 858 (9th Cir. 1991). Although the unreviewed parts of Exhibit A enlarged the scope of the warrant, the items for which Judge Louie found probable cause — in particular, cocaine and narcotics paraphernalia — formed "the focus, and the vast majority" of the search.

**[8]** Our case law on searches that exceed the terms of valid warrants also supports a remedy of partial suppression. "Ordinarily, only evidence that is obtained in violation of a warrant is suppressed." *United States v. Chen*, 979 F.2d 714, 717 (9th Cir. 1992). However, "in cases where there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation." *Id.* Wholesale suppression is an "extraordinary remedy" that is appropriate "only when the officers transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing." *Id.*

**[9]** When officers violate the terms of a warrant in execution, partial suppression is the norm unless the officers engaged in a general search. In *United States v. Mittelman*, 999 F.2d 440 (9th Cir. 1993), the FBI conducted an overbroad search of a law office. *Id.* at 441-42. We vacated the district court's order to suppress all evidence seized during the search and remanded for a determination of whether the officers' actions "amounted to an 'impermissible general search' " warranting wholesale suppression. *Id.* at 445 (citing *Chen*, 979 F.2d at 717). We further held that "[i]f the violations of the search warrant were not so extreme as to justify this extraordinary remedy, the district court should determine what evidence, if any, was seized in violation of the warrant and order the suppression of that evidence only." *Id.*; *see also United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985) ("We do not condone the seizure of items not described in the warrant, but we hold that the agents' violation of the warrant's terms was not flagrant and did not invalidate the seizure of relevant items."); *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371, 1376 (9th Cir. 1983) (when overbreadth does not rise to the level of a "general warrant," "[t]he remedy is not a return of all items seized but selective suppression or return of the items improperly seized").

**[10]** Even with the wrong version of Exhibit A, the warrant in this case fell far short of authorizing a "general search," and Officer Kasper's accidental attachment of the wrong version did not rise to the level of "flagrant disregard." Though the Exhibit A attached to the warrant was overbroad compared to the version of Exhibit A authorized by Judge Louie, it significantly constrained the searching officers' discretion in terms of the places they could search and the items they could seize.

**[11]** For the reasons Judge Kozinski gives in his dissent, we do not condone the sloppy police work that resulted in the violation of Sears's Fourth Amendment rights. Specifically, we do not condone reprinting from a computer file a docu-

ment that is thought to be the same as that contained in an approved search warrant, as was done here, instead of photocopying the document itself. Indeed, if Officer Kasper's actions in this case had been shown to be standard practice in the SFPD, and the resulting problem seen here to be anything other than unusual and unforeseen, this would be a very different case. However, based on the facts of the case before us, we conclude that the district court properly ordered suppression of only that evidence seized pursuant to the unreviewed portions of the warrant.

**AFFIRMED.**

KOZINSKI, Circuit Judge, dissenting:

The constitutional deficiency in this case is not, as the majority poses the issue, an overbroad search warrant. It is that the police tampered with the warrant after it was authorized by the reviewing judge. As a consequence, the warrant executed and served by the San Francisco Police Department was a legal nullity. Everything seized under this sham warrant must be suppressed.

**1.** What happened here is far more troubling than one would surmise from the majority's prosaic recitation of the facts. Officer Kasper presented Judge Louie with a packet of documents that included a search warrant, a statement of probable cause and an Exhibit A listing the boundaries and objects of the proposed search. When the judge approved the search, he expressly incorporated Exhibit A into the section of the warrant listing the items to be seized. Exhibit A—the one reviewed by Judge Louie—thus was part of the warrant.

Had Officer Kasper simply passed out photocopies of the warrant to his search team, blocking out the probable cause section (to comply with the police department's policy of not

serving the probable cause statement at the time a warrant is executed), there would have been no constitutional problem. But Officer Kasper did something far more exotic. He logged into his computer and printed a document titled Exhibit A. The file Officer Kasper used to print the document was not the same one he had used to print the Exhibit A and probable cause statement he had presented to Judge Louie. Rather, he printed a different file, one that contained only an Exhibit A, hoping (in vain, as it turns out) that it would contain a description of seizable items and searchable areas identical to the one Judge Louie had approved. Officer Kasper then attached this new Exhibit A to the search warrant without providing any indication of what he had done.

The majority is "certain that there would have been no Fourth Amendment violation had the printout of Exhibit A been identical to the version approved by Judge Louie, just as [it is] certain that photocopies of warrants are acceptable, indeed indispensable, aids to searching officers." Maj. op. at 7281. Not so fast. Making a photostatic image copy of the warrant the magistrate has actually seen and reviewed is very different from copying another document that is, in the words of the majority, "identical" to it. For example, I'm not at all prepared to say it would have been permissible for Officer Kasper to photocopy Exhibit A from a different warrant than the one approved by Judge Louie for 7 Maddux—even if Officer Kasper thought the two Exhibits A were identical. Photocopying the very document seen by the judge requires no judgment and leaves room for few mistakes. Copying another document opens up the possibility of reproducing something different from the original; it crosses the fine line between duplication and forgery.

The risk of error or manipulation is much greater when the substitution is made using a computer rather than a photocopier. In order to duplicate a document by reprinting it, an officer first has to find the correct file on the computer—in the case of an institution like a police department, often choosing

from among dozens of similar files. Once he has identified the right document, the officer must confirm that it was not altered by someone else and refrain from introducing changes of his own. The danger that the wrong file will be selected, or that the right file will be altered, is not trivial. This is especially true where, as here, the officer deliberately prints a file he knows is not the one he used to print the original document.

Exacerbating the problem is the fact that there is no good way for a reviewing court to distinguish between inadvertent and intentional alterations. It seems unlikely that an officer who purposely alters a warrant will admit it when called to testify in court. And, because the process of accessing a computer file involves a single person using a machine for just a few moments, there is no effective way to impeach an officer who claims he chose the wrong file by mistake.

Of course, distinguishing between intentional and negligent errors only becomes an issue if the discrepancy is detected. This is far from certain, as this case illustrates. The divergence between the two versions of Exhibit A came to light only because Sears filed an earlier motion to suppress, prompting the government to respond with a declaration from Officer Kasper in which he revealed how he altered the judicially-approved warrant before giving it to the leader of his search team. Without this fortuitous chain of events, Officer Kasper's actions would no doubt have remained undiscovered.

An officer who logs into his computer to reprint a file thus faces a negligible chance of detection if he selects the wrong file or makes changes to the right one. Human experience teaches that carelessness and temptation are most easily avoided when the risk of exposure is high and the penalty stiff. The corollary is that processes insulated from effective scrutiny and subject to meager sanctions tend to encourage sloppiness—or worse.

Given the low likelihood of detection and the relatively wide margin for error or chicanery, I don't find it at all self-evident that an officer may duplicate a warrant by printing it afresh from a computer file. We should be very reluctant to approve such manipulation of court-approved documents. I would be more inclined to acquiesce in the procedure if it served some legitimate purpose that could not easily be achieved otherwise. Photocopying the warrant approved by the magistrate, for example, has no ready substitute and is, as the majority notes, indispensable to the execution and service of warrants. But the clandestine process adopted by the police in this case is completely unnecessary. The police department's policy of not including the statement of probable cause when serving the warrant could easily be satisfied by covering up or detaching the sections relating to probable cause when the warrant is photocopied, or by printing the probable cause statement as a separate document in the first place. There was simply no need for Officer Kasper to play mix-and-match with the pages of the search warrant after it had been considered and authorized by Judge Louie.

**2.** In any event, we need not decide the esoteric question of whether the warrant would be valid if Officer Kasper had succeeded in printing a file identical to Exhibit A. The fact is that he did not; the file he printed was substantively different from the Exhibit A approved by Judge Louie, and he omitted the Exhibit A that Judge Louie *had* approved. Without the approved list of seizable items, the warrant was a legal nullity; it was as if Officer Kasper had attached his grocery list as Exhibit A. The warrant, and hence the search of 7 Maddux, was entirely invalid. *See Groh* v. *Ramirez*, 540 U.S. 551, 557 (2004).

**3.** The Supreme Court has emphasized that the exclusionary rule is to be applied pragmatically, balancing the costs of excluding evidence with the benefits of deterring overreaching by law enforcement officers. *See Illinois* v. *Krull*, 480 U.S. 340, 347 (1987); *United States* v. *Leon*, 468 U.S. 897,

906-07 (1984). Relying on cases dealing with overbroad warrants, my colleagues conclude that partial suppression—which in this case means suppression of nothing at all—is the appropriate remedy. But overbreadth analysis applies to situations where the warrant, as issued by the reviewing judge, authorizes searches too general to satisfy constitutional demands, or includes objects for which there is no probable cause. *See, e.g.*, *United States* v. *Clark*, 31 F.3d 831, 836 (9th Cir. 1994); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857-58 (9th Cir. 1991). Severing and preserving the valid portions of such warrants is appropriate because those portions have been authorized in advance by a judicial officer, and because overbreadth problems are easily detected and frequently litigated. There is thus little risk that the constitutional defect will go undiscovered; the remedy need be no broader than the harm.

What we have here, by contrast, is an officer who doctored a judicially-approved warrant and told no one what he had done. This conduct was completely unauthorized, quite dangerous and could easily have remained undetected. Now that it's come to light, it just won't do to say "close enough for government work." We must make sure that no police officer even thinks of pulling a stunt like this again.

My colleagues say that "if Officer Kasper's actions in this case had been shown to be standard practice in the SFPD, and the resulting problem seen here to be anything other than unusual and unforeseen, this would be a very different case." Maj. op. at 7286. But why? Fourth Amendment rights are individual, not collective; I am aware of no doctrine that provides a different remedy for their violation depending on whether the rights of others are similarly violated. If Officer Kasper's conduct was impermissible and resulted in a violation of defendant's rights, as the majority eventually recognizes, *see id.*, then defendant is entitled to the same relief whether he is the lone victim or one of many. Antiseptic suppression of the seized evidence—and a stern warning that this

conduct will never be tolerated—is the only appropriate remedy.