UNITED STATES of America,
Plaintiff–Appellee,

v.

William Andrew VIGIL, Defendant–Appellant.

No. 92–50114.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted January 7, 1993.

Decided March 29, 1993.

---

Patrick N. Smith, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Steven M. Arkow, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, POOLE, and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

William Andrew Vigil appeals from his conviction of two counts of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a)(1). He contends that evidence used against him should have been suppressed and that the evidence at trial was insufficient to establish his guilt beyond a reasonable doubt. We affirm.

## SUPPRESSION HEARING

At the suppression hearing Vigil supplied this version of the facts: He entered the magnetometer at the Southwest Airlines terminal in Los Angeles Airport. The magnetometer beeped as he entered it. The security agent, Carolyn Chisolm, asked if he was wearing a belt buckle. He said no, it was his boots making the beep. She asked him to lift his shirt and when he did so she grabbed the bundle under the shirt. She asked if it was soap. At this point Vigil was still at the entrance side of the magnetometer. He did not say how he answered Chisolm but he did not tell her or anyone else that the bundle was "my dope" or "my drugs," and put it on the table.

Vigil's account was contradicted on material points by Chisolm. The district court made the following findings of fact, rejecting Vigil's version and accepting Chisolm's:

1. On September 12, 1991, Carolyn Chisolm, a security guard for Ogden Allied ("Ogden"), a privately owned corporation, was manning a metal detection unit at Terminal One of Los Angeles International Airport ("LAX"). Her responsibility was to screen passengers for weapons and other contraband before they boarded outgoing flights.

2. Passengers who wish to be cleared beyond the screening point must comply with the preboard screening procedures. Passengers have the option to refuse screening. In accordance with procedures employed by Ogden, passengers who wish to be cleared are required to place their baggage on a conveyer belt that passes through an X-ray machine. The passengers themselves empty their pockets and pass through a magnetometer which can detect metal on an individual's person. If metal is detected, the device will ring and the subject is asked to remove any additional metal on his person and to pass through the magnetometer which can detect metal. If metal is detected a second time, the individual may be examined with a hand-held metal detection device by a security guard of the same sex as the passenger or a supervisor. The purpose of the metal detectors and procedures established regarding their use is to prevent and deter outgoing airline passengers from carrying weapons aboard aircraft.

3. On September 12, 1991, at approximately 5:45 a.m., an Hispanic male, later identified as William Andrew Vigil ("defendant"), walked through the magnetometer unit manned by Ogden security guard Carolyn Chisolm ("Chisolm") at Terminal One which screens passengers for outbound flights of Southwest Airlines ("SWA"). Defendant set off the alarm as he walked through the magnetometer.

4. Ms. Chisolm asked defendant to step back from the entrance of the magnetometer and remove any metal objects that may be setting off the machine. Ms. Chisolm noticed that defendant's shirt bulged out, and she thought he had a pouch or a belt buckle underneath his shirt. Defendant stood next to the magnetometer with his arms folded and leaned against the glass partition blocking the entrance to the machine.

5. Defendant did not seem to understand Ms. Chisolm so she pointed to de-

fendant's shirt. In an effort to find out what was setting off the magnetometer, Ms. Chisolm asked defendant if he was wearing a belt buckle. Defendant replied, "My boots, maybe my boots." After she processed the next passenger, Ms. Chisolm asked defendant whether he intended to proceed through the magnetometer. Defendant then walked through the magnetometer and placed what Ms. Chisolm described as a white substance, wrapped like a sandwich between two pieces of cardboard, on the table beside the magnetometer.

6. Ms. Chisolm asked defendant what he had just laid down, because she believed it might be some sort of powder explosives. Defendant replied, "That's my dope, my drugs." After defendant had passed through the magnetometer to the "sterile" side of the unit, he set off the alarm again and Ms. Chisolm immediately called for a Checkpoint Security Supervisor (CSS).

7. When the Checkpoint Security Supervisor Joyce Washington arrived, Ms. Chisolm reported that defendant had not cleared the metal detector. Ms. Washington observed a package of white powdery substance, wrapped in cellophane, and shaped like a big sandwich, lying on the table next to the magnetometer. Ms. Washington then asked whom the white package belonged to, and defendant replied that it was his package. Ms. Washington then asked what the package was, and defendant replied that it was his "dope." Ms. Washington then called the airport police who arrested defendant.

8. At no time during this entire incident, did Ms. Chisolm or anyone else grab defendant's cocaine package from underneath his shirt or tear anything away from defendant. The use of the magnetometer, as well as the entire incident leading to defendant's removal of the cocaine from underneath his shirt was conducted by Carolyn Chisolm, an employee of the privately owned corporation Ogden Allied. Ms. Chisolm's actions were on behalf of a private party, seeking a private interest in securing the safety of its clients' passengers.

9. Ms. Chisolm did not in any way "stop" defendant or otherwise deprive his freedom of action in any significant way. Ms. Chisolm was manning the metal detector when defendant set off the alarm as he walked through during the pre-boarding process. Ms. Chisolm requested that defendant remove any metal items on his person if he wanted to clear the metal detector. In trying to do so, defendant, on his own accord, laid down on the table his package of cocaine which he had concealed underneath his shirt. Defendant then walked through the magnetometer again, and set off the alarm. At this point, Ms. Chisolm notified her supervisor.

10. The Court finds that at no moment during this entire incident did Ms. Chisolm stop or search defendant so as to trigger application of the fourth amendment. Defendant could have elected not to reenter the magnetometer. Defendant was equally free to leave the security area of the terminal. Defendant was even free to leave the airport.

11. Following defendant's arrest, and pursuant to a valid search incident to arrest, Officer Randolph Caldwell of LAX airport police also seized from defendant a bundle in defendant's right boot containing three pieces of "black tar" containing 76 grams of heroin (20% purity), and a package containing 18 grams of cocaine (50% purity) in defendant's left boot.

12. To the extent the credibility of the witnesses governs the above Findings of Fact, this Court finds the testimony of Carolyn Chisolm and Joyce Washington to be consistent and credible. On the other hand, this Court finds the testimony in defendant's affidavit to be less credible and contrary to the circumstances described above.

13. Any Conclusions of Law deemed to be Findings of Fact are hereby incorporated by reference into these Findings of Fact.

After finding these facts the court concluded that Vigil had voluntarily consented to the discovery of his drugs and also that

Chisolm had undertaken a valid administrative search.

## THE EVIDENCE AT TRIAL

Vigil contends that Chisolm did not sufficiently identify him at trial as the person who possessed the drugs. He also contends that the government did not show that he knowingly possessed them. Finally, he contends that Vigil was carrying the drugs through the magnetometer as a bailment from someone else, who did not relinquish ownership of the package.

To the contrary was Chisolm's testimony as recited above and the testimony of the airport police officer called by Chisolm. Vigil, who took the witness stand, admitted that he had a package of cocaine under his shirt and black heroin in his boot.

## ANALYSIS

The findings of fact of a district court at the suppression hearing have been set out above as a good example of the district court resolving disputes about issues of fact material to the suppression of evidence. The findings establish beyond question that Vigil consented. He cannot ask this court to substitute our judgment of credibility for the judgment of the district court.

Under our precedents the action of Chisolm was state action subject to the Fourth Amendment. *United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1243 & n. 2 (9th Cir.1989); *United States v. Davis*, 482 F.2d 893, 904 (9th Cir.1973). Vigil's voluntary consent eliminated any Fourth Amendment issue.

As to the evidence at trial, Vigil's attack on Chisolm's credibility is again unavailing after a jury has found the government's witnesses credible, and Vigil's theory of a bailment of drugs to which he had no ownership is unpersuasive. He was tried and convicted for possession. He possessed the drugs in quantity, indeed in quantity sufficient to indicate the intention to distribute.

AFFIRMED.