15 F.3d 1090
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Xuan Ngoc BUI, Defendant-Appellant.
 No. 92-50566.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 6, 1993.*
Decided Jan. 10, 1994.
 
 Before: FLETCHER, PREGERSON, and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Appellant Xuan Ngoc Bui appeals the district court's denial of his motion to suppress evidence allegedly seized in violation of the Fourth Amendment. Appellant conditionally pled guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. Sec. 841(a)(1), and was sentenced to 63 months incarceration, followed by five years' supervised release. We affirm.
 
 BACKGROUND
 
 3
 Appellant Xuan Ngoc Bui entered American Airlines' Terminal Four at the Los Angeles International Airport on April 6, 1992. As he attempted to pass the security checkpoint area, he set off the magnetometer (or "metal detector"). The magnetometer was monitored by an employee of Andy Frain Security Services ("AFS"), a private security firm under contract with American Airlines to screen persons passing into secure areas. Pursuant to the policies and procedures of American Airlines and AFS, Bui was referred to another security employee, to have a hand-held magnetometer ("hand wand") waved over Bui's body for the purpose of determining whether the source of metal was a gun, explosive, or other dangerous weapon or device.
 
 
 4
 While the hand wand passed down Bui's back, the wand struck and alerted to a hard object hidden under Bui's shirt and tucked into the back of his waistband. The security employee said to Bui, "Can I check it?" Bui replied "yes," then proceeded to hand the object to the security employee. The object was a package which was wrapped in newspaper and which contained two smaller plastic-encased brick-shaped objects.
 
 
 5
 The security employee asked Bui what was in the inner packages. Bui replied that it was sugar. The security employee then called for his supervisor. Upon arriving, the supervisor asked Bui what was in the package, and Bui again replied that it was sugar.
 
 
 6
 The supervisor then asked Bui if he would allow inspection of the package. Bui consented. The supervisor had a pair of scissors brought to Bui to help him open the package. While cutting the inner packages open, Bui nicked a corner of the package with the scissors. Seeing a loose white powdery substance seep out, the supervisor suspected that the package did not contain sugar and had airport police called.
 
 
 7
 The police arrived. Their testing revealed that the substance was approximately 171 grams of heroin. Bui was then placed under arrest.
 
 
 8
 Bui filed a motion to suppress the heroin on the ground that it was obtained through an illegal search that violated the Fourth Amendment. Following the district court's denial of Bui's suppression motion, Bui entered a conditional guilty plea to the one-count indictment for possession with intent to distribute approximately 171 grams of heroin, in violation of 21 U.S.C. Sec. 841(a)(1). The district court sentenced Bui to 63 months incarceration and 5 years supervised release. Bui now appeals the district court's denial of his motion to suppress. We have jurisdiction under 18 U.S.C. Sec. 3742 and 28 U.S.C. Sec. 1291.
 
 ANALYSIS
 
 9
 Appellant Bui contends that the district court erred in denying his motion to suppress the evidence seized during the airport search because the heroin packages found on his body were the fruits of an unlawful search and seizure in violation of the Fourth Amendment. Generally, motions to suppress are reviewed de novo. United States v. Khan, 993 F.2d 1368, 1375 (9th Cir.1993); United States v. Homick, 964 F.2d 899, 903 (9th Cir.1992). The trial court's factual findings are reviewed for clear error. United States v. Negrete-Gonzales, 966 F.2d 1277, 1282 (9th Cir.1992). The lawfulness of a search and seizure is a mixed question of law and fact reviewed de novo. See United States v. Mittleman, 999 F.2d 440, 442 (9th Cir.1993); United States v. Huffhines, 967 F.2d 314, 316 (9th Cir.1992). A district court's determination whether a defendant voluntarily consented to a search depends on the totality of the circumstances and is a question of fact reviewed under the clearly erroneous standard. United States v. George, 987 F.2d 1428, 1431 (9th Cir.1993); United States v. Kelley, 953 F.2d 562, 566 (9th Cir.1992); United States v. Brown, 884 F.2d 1309, 1311 (9th Cir.1989), cert. denied, 493 U.S. 1025 (1990).
 
 
 10
 The district court found the facts described above, and reached the following legal conclusions.
 
 
 11
 1. Because any of the actions complained of were conducted by employees of a private security company hired by American Airlines, there was no governmental action implicating the Fourth Amendment.
 
 
 12
 2. In the alternative, even if such action is considered governmental for purposes of the Fourth Amendment, the actions were conducted solely for purposes of air safety. Furthermore, such actions were reasonable and were supported by probable cause in light of the magnetometer and hand wand alerts, the discovery of the mysterious package hidden in defendant's waistband, and defendant's suspicious claim that the package contained sugar.
 
 
 13
 3. Defendant's consent to search the package was given freely and voluntarily and was not the result of coercion.
 
 
 14
 Regarding the first conclusion, the Government concedes for purposes of this case that our recent holding in United States v. Vigil, 989 F.2d 337, 340 (9th Cir.1993) cert. denied, 114 S.Ct. 205 (1993), resolves the question whether the AFS private security employees' actions constituted government action for purposes of the Fourth Amendment. In Vigil, the district court's findings and conclusions were similar to those here. In Vigil we held that "[u]nder our precedents the action [of the private security guard] was state action subject to the Fourth Amendment." Id. at 339 (citing $124,570, 873 F.2d 1240, 1243 & n. 2 (9th Cir.1989) and Davis, 482 F.2d 893, 904 (9th Cir.1973)). Because Vigil is controlling on this issue, we conclude that the search of Bui made by AFS security employees qualifies as a governmental search for Fourth Amendment purposes.
 
 
 15
 Nevertheless, we hold that the actions of the AFS security employees were proper for the reasons stated by the district court.
 
 
 16
 First, the search was justified as part of a valid administrative search. We have repeatedly held that warrantless airport security checks are valid administrative searches, so long as they are limited to searches for guns, explosives, or other dangerous devices, made in the interest of airport safety. See United States v. Davis, 482 F.2d 893; United States v. $124,570 U.S. Currency, 873 F.2d 1240. This is true even where the search for weapons reveals other contraband. $124,570, 873 F.2d at 1246-47 n. 6.
 
 
 17
 The purpose of the hand wand check of Bui was to locate the source of the metal that had set off the magnetometer. Bui argues that because the hand wand found no metal, no other non-metallic objects could be searched. We reject this argument. When the security employee first asked Bui if she could check the object, she had no way of knowing that it did not contain metal. The fact that the hand wand had alerted to it indicated just the opposite. Moreover, the hard object located suspiciously in the back of Bui's waistband could just as easily have been plastic explosives, which would be a legitimate threat to airport security.[1] Thus, the security employees had a reasonable basis for determining what was in the packages.
 
 
 18
 Bui also contends that, although "it was permissible to use a [hand wand] to find the source of the metal," it was "not permissible to poke appellant and prod appellant's body with the magnetometer." This argument misstates the facts. There is no evidence that Bui was poked or prodded incident to the search. To be effective, the hand wand must be held close to a person's body to ascertain the source of the hidden metal. In properly operating the hand wand, the wand will brush against a person's body occasionally. It was during a properly conducted sweep of the wand that the wand struck the object under Bui's shirt. There is no evidence that the employee misused the hand wand, or that he acted with the intent to find anything other than the source of the metal. Thus, the search of Bui was well within the permissible scope of an airport administrative search.
 
 
 19
 Finally, Bui argues, relying on $124,570, that once the powder began to seep from the package it was obvious that he was not carrying guns or explosives, and hence the intrusion into his affairs should have ceased. But AFS did cease its investigation at that point: what it did was to turn Bui over to the police. While the court in $124,570 expressed its "concerns ... that administrative searches not become a tool for law enforcement," 873 F.2d at 1244, the situation addressed by that court is very different from the situation here. In $124,570--as the title of the case suggests--what the security employees found in the claimant's luggage, and what they reported to law enforcement authorities, was a large quantity of currency. But there is nothing illegal about travelling on domestic flights with large amounts of money. In alerting officials to the fact that claimant was doing so, and enabling them to forge the link between the currency and drug sales, the security employees in $124,570 were truly acting as "tools" of law enforcement. The fact that they had a policy of reporting passengers who travelled with large amounts of currency, and were rewarded for their tips, only reinforces that impression.
 
 
 20
 Here, by contrast, the security personnel were not working hand-in-glove with the police to uncover the trial to a crime or to crime evidence. They saw in Bui's possession what they suspected was contraband. More importantly, they were witnessing what they legitimately believed to be (and what in fact was) a crime in progress. The fact that this occurred in the scope of and as a result of their permissible administrative search does not mean that they were prohibited from contacting law enforcement officers.
 
 
 21
 Moreover, the district court's third and alternative reason for denying the motion to suppress was also correct. As the district court held, Bui voluntarily consented to the AFS employees' search of the package's contents. In Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), the Supreme Court held that the State bears the burden of demonstrating that the consent was
 
 
 22
 voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.
 
 
 23
 The facts in this case, as found by the district court, are undisputed. There are no facts presented that would indicate that Bui's consent was obtained through duress or coercion. Therefore, Bui's "voluntary consent eliminat[es] any Fourth Amendment issue." Vigil, 989 F.2d at 340.
 
 
 24
 Based on our conclusion that the district court properly denied Bui's motion to suppress evidence, we AFFIRM.
 
 
 
 *
 The panel unanimously found this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 See United States v. Albarado, 495 F.2d 799, 809 (2d Cir.1974) ("Hijackers as well as airport officers know of the existence of plastic explosives or even ordinary dynamite. If an officer comes lawfully upon a container which may conceal such items, he may require that they be opened to his inspection before the passenger is allowed to proceed to board with the container.")