NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0267n.06

No. 10-1524

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Apr 26, 2011**

LEONARD GREEN, Clerk

DEVON TINDLE,                                  )
                                               )
    *Plaintiff-Appellee,*                  )       On Appeal from the United
                                               )       States District Court for the
v.                                             )       Eastern District of Michigan
                                               )
L. ENOCHS, Wayne County Sheriff Deputy         )
                                               )
    *Defendant-Appellant.*                 )

Before:  SUTTON and KETHLEDGE Circuit Judges; and HOOD, Senior District Judge.[*]

**PER CURIAM**.

**I.      BACKGROUND**

In 2006, Wayne County Sheriff Deputy LaTonya Enochs served as the officer in charge of

the execution of a search warrant targeting 20075 Fenmore and a neighboring house as part of a

narcotics investigation.  As the officer in charge, Enochs waited out of sight of the house, getting

updates from the scene via radio.  As part of the execution of the search warrant, two undercover

officers approached the house in order to confirm the presence of drugs by attempting to purchase

drugs for themselves.  After the officers were turned away, Enochs received word via radio that the

undercover officers had failed to purchase any drugs, and that a blue car had pulled into the

_____

[*]  The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of
Kentucky, sitting by designation.

1

driveway. Enochs says she was told via radio that "three men were leaving the house and looked like they were going to leave in the blue car."

Devon Tindle testified that he was playing video games in and departed from a house, not subject to the search warrant, which was located to the north of 20075 Fenmore on the afternoon of the raid. Enochs disputes this testimony. It is undisputed, however, that the house Tindle says he left that day shared a common driveway with the one located at 20075 Fenmore. Wayne County Sheriff's deputies stopped the car in which Tindle was riding soon thereafter. Tindle was then "forced to lay on the ground on his stomach, . . . handcuffed, and placed in the back of a Sheriff deputy's car" to be taken back to 20075 Fenmore along with the others inside the car. He was detained for two to three hours before deputies charged him with misdemeanor loitering and released him.

Tindle filed his complaint against Defendant Enochs in the Wayne Circuit Court alleging state law tort claims as well as a violation of 42 U.S.C. § 1983 for Enochs' pre-arrest detention of Tindle as officers executed a search warrant on a nearby house. Enochs removed the case to the district court and answered the complaint raising, among other defenses "[q]ualified immunity under federal law."

Enochs subsequently sought summary judgment arguing that she did not deprive Tindle of "any federally protected right [and that] she is shielded from liability by qualified immunity" and that the state law tort claims failed as a matter of law. The district court granted summary judgment in favor of Enochs as to "Tindle's state law claims of false imprisonment, false arrest, malicious prosecution and assault and battery because Tindle [] failed to contest [Enoch's] motion for summary judgment as to those claims." The district court also denied, in part, Enochs' motion for summary judgment as to the question of qualified immunity. *Id.* Enochs filed this appeal immediately

2

thereafter "intending to establish that the trial court erred in denying Defendant Enochs' Motion for Summary Judgment on the issue of qualified immunity."

This Court finds that Enochs is entitled to qualified immunity because she reasonably believed she could detain Tindle. Accordingly, we **REVERSE** the district court's denial of Enochs' Motion for Summary Judgment and **REMAND** this matter to the district court for further proceedings in accord with this opinion.

## II. DISCUSSION

This Court hears appeals of "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Furthermore, the Supreme Court has held that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable "final decision" within the meaning of 28 U.S.C. § 1291. *Johnson v. Jones*, 515 U.S. 304, 312-13 (1995) (citation omitted). Thus, the panel's inquiry is limited to a question of law, namely whether, based on Tindle's version of the facts, Enochs may assert the defense of qualified immunity. *Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007) (citations omitted).

Under the doctrine of qualified immunity, "government officials performing discretionary functions [are to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The plaintiff bears the burden of proof in showing that the defendant is not entitled to qualified immunity by proving "both that, viewing the evidence in the light most favorable to [the plaintiff], a constitutional right was violated and that the right was clearly established at the time of the violation." *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009) (citations omitted). Tindle fails, however, to show that his constitutional rights were violated by Enochs.

3

Although Tindle argues that Enochs did not have sufficient probable cause to believe that Tindle had engaged in activity that would make his pre-arrest detention constitutional, this Court finds that Enochs reasonably could have believed she could have detained Tindle the exception to the probable cause requirement found in *Michigan v. Summers*, 452 U.S. 692 (1981). In *Summers*, Detroit police officers were preparing to execute a search warrant on a house for narcotics when Summers exited down the front steps of the house. *Id.* at 693. The officers asked Summers for help gaining entry into the house and "detained him while they searched the premises." *Id.* After finding narcotics in the basement, they arrested Summers and, after a subsequent search, found heroin in his coat pocket. *Id.* Instead of determining that the officers had probable cause for the detention, the Supreme Court created an exception to the probable cause requirement holding,:

> If the evidence that a citizen's residence is harboring contraband is sufficient to persuade a judicial officer that an invasion of the citizen's privacy is justified, it is constitutionally reasonable to require that citizen to remain while officers of the law execute a valid warrant to search his home.

*Id.* at 704-05. This exception has since been extended to include residents and non-residents of a house subject to a search warrant that leave or arrive at or near the time of the search warrant's execution. *See United States v. Bohannon*, 225 F.3d 615, 616-18 (6th Cir. 2000) (upholding pre-arrest detention of people arriving at a house subjected to the execution of a search warrant); *United States v. Cochran*, 939 F.2d 337, 339 (6th Cir. 1991) (upholding pre-arrest detention of the owner of a house subject to a search warrant who departed by car from the house immediately before officers executed the search warrant). Like the officers in *Summers*, Enochs reasonably believed that Tindle had left a house targeted by a search warrant, according to the reports she had received. *See Summers*, 452 U.S. 692. Thus, Enochs reasonably believed that her pre-arrest detention of Tindle was constitutional. Furthermore, Tindle has failed to show that Enochs received any information that might have alerted her that Tindle had not been in the house subject to the search warrant at or

4

near the time of execution. Indeed, Tindle concedes that he was riding in a car that left the house sharing a common driveway with the one subject to the search shortly before it was stopped.

In showing that a defendant has violated a plaintiff's constitutional rights, the plaintiff cannot survive summary judgment by merely presenting "grounds for speculation that defendants misread" a situation but, rather, must present "facts demonstrating that [the defendant,] in potentially misinterpreting [a situation, was] plainly incompetent or deliberately violated [plaintiff's] rights." *Chappell*, 585 F.3d at 916; *see also Hunter v. Bryant,* 502 U.S. 224, 229 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). Tindle argues that the conflicting descriptions about the car, reports of how many men (and the ages of those men) left the house, and whether Tindle had been an occupant of the 20075 Fenmore during the time of surveillance shows, at the least, a genuine issue of material fact as to the question of whether the pre-arrest detention of Tindle fits inside the boundaries set by *Michigan v. Summers*, 452 U.S. 692 (1981). These disputed facts, however, are immaterial to our inquiry as Tindle has failed to prove that Enochs knew, or even suspected, that Tindle's detention did not arise from his departure from the house at any time during his detention.

Though the district court held that Tindle's assertions to Enochs that he was not inside 20075 Fenmore gave Enochs information that made the detention unreasonable, Tindle's protestations do not transform this otherwise constitutional pre-arrest detention into a violation of the Fourth Amendment. A police officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation." *Criss v. Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (holding that officers did not have to investigate plaintiff's claims that his roommate had stolen street signs before arresting plaintiff for the alleged crime). Thus, even considering all disputed facts and inferences in favor of Tindle,

5

Enochs had no obligation to give Tindle's explanation any credibility. Accordingly, Tindle has not shown that Enochs was "plainly incompetent or deliberately violated" Tindle's constitutional rights when she subjected him to a pre-arrest detention, and we conclude that the district court erred in denying Enochs' Motion for Summary Judgment. *Chappell*, 585 F.3d at 916.

## III. CONCLUSION

Accordingly, for the above-stated reasons, we **REVERSE** the district court's denial of Enochs' Motion for Summary Judgment and **REMAND** this matter to the district court for further proceedings in accord with this opinion.