UNITED STATES of America,
Plaintiff-Appellant,

v.

Louis John IPPOLITO, Michael Contino,
Irving Schwartz, William Darnold,
Lawrence Miller, Thomas Arrants, and
Arthur Joseph Natoli, Defendants-Appellees.

No. 84–5257.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 1985.

Decided Oct. 29, 1985.

James Henderson, Richard Small, Dept. of Justice, Los Angeles, Cal., for plaintiff-appellant.

Richard Sherman, Los Angeles, Cal., James Twitty, Beverly Hills, Cal., Arthur Mabry, Harland Braun, Samuel Jackson, Jackson & Wikle, Los Angeles, Cal., Milton E. Grusmark, Miami, Fla., for defendants-appellees.

Before GOODWIN, FLETCHER and PREGERSON, Circuit Judges.

FLETCHER, Circuit Judge:

The United States appeals from the district court's suppression of information gained through wiretaps. The district court relied on *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold that false and misleading information in government affidavits concerning the necessity of the wiretaps required suppression of the information derived from the wiretaps. We affirm.

### FACTS

On November 3, 1982, the district court issued an order allowing the government to intercept certain wire communications. The government's application for the order was supported by an affidavit of Ralph E. Lumpkin, Special Agent, FBI, that included the following statements that the court, in subsequent hearings, found false or misleading:

118. The confidential informants referred to in the above paragraphs have all stated that they would not testify regarding the information they furnished to the Federal Bureau of Investigation because they fear retaliation to themselves or their families. The La Cosa Nostra, including the Los Angeles organized crime family, has had a reputation since the 1930's for reprisals against anyone who does not respect their demands or who would testify concerning illegal activity.

119. In addition, none of the sources utilized in this affidavit are familiar with

all the various aspects of the criminal enterprise and electronic surveillance is therefore, the only method of obtaining evidence as to all of the various criminal activities.

At the suppression hearing it was developed that Hanophy, informant number 2, was working with agent Schettino, a former FBI agent in a Miami drug investigation involving Ippolito. Although Hanophy told FBI Agent Lumpkin and another agent, Sadler, that he would not testify in the California case because he feared Ippolito, it became apparent that this assertion was not entirely true. Rather, it developed that Agent Schettino had told Hanophy to say that he could not testify so that his refusal could be used to demonstrate the necessity of a wiretap in the California case. The testimony at the suppression hearing also established that Hanophy was willing and probably able to infiltrate the entire California conspiracy.

It is true that at the time of Hanophy's meeting with the FBI Agents, Hanophy was not aware of the involvement of several of the co-conspirators later indicted in this case. However, Hanophy testified that he had been an important part of Ippolito's importing schemes, that Ippolito wanted Hanophy to go to Colombia to help arrange for the drug connection, and that he knew the identity of some of the other co-conspirators at the time he was asked if he would testify. Hanophy also testified that he had expressed his willingness to have his conversation about the drug deals monitored and to draw conspirators out into the open where they could be brought under surveillance. Schettino characterized Hanophy's former involvement with Ippolito as being his "right hand man" and testified that at one point, when Hanophy was acting as an informant, Ippolito had asked Hanophy if he would run his operations while Ippolito served an up-coming prison term.

The district court found that the government had made intentionally false, reckless or misleading statements in paragraphs 118 and 119. The court then determined that a reasonable district court judge could

have denied the wiretap application if the offending paragraphs were omitted and the affidavit was examined to see if there was necessity for the wiretaps or, alternatively, if the paragraphs were replaced with the truth and the affidavit was examined to see if there was necessity for the wiretaps. Accordingly, the district court found that the false statements and factual omissions were material and that suppression was required.

## DISCUSSION

### A. Standard of Review

 The application of *Franks v. Delaware* to wiretap orders presents a question of law and therefore should be reviewed *de novo*. *See Christensen v. United States*, 755 F.2d 705, 707 (9th Cir.1985). Underlying factual findings of the district court regarding materiality are reviewable under the clearly erroneous standard. *See United States v. Southard*, 700 F.2d 1, 10 (1st Cir.), *cert. denied sub nom. Ferris v. United States*, —— U.S. ——, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The ultimate question, whether the misstatements are material, is a mixed question of law and fact and should be reviewed *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1202–03 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B. Franks Materiality

The district court found that the government made intentionally false or misleading statements in order to persuade the court that a wiretap was necessary. The court also found that the challenged statements and omissions were material to obtaining the wiretap order. It followed that the wiretap evidence should be suppressed. The Government does not seriously challenge the fact of intentional deception, but disagrees that the deception called for suppression.

 In *Franks v. Delaware*, the Supreme Court determined the circumstances in which it is appropriate to suppress evidence derived from a warrant issued on the basis of an affidavit that contained false

statements concerning probable cause. This circuit has not previously had occasion to apply the *Franks* analysis to false statements concerning the necessity for a wiretap sought by the government pursuant to 18 U.S.C. § 2518. The *Franks* court held that the reviewing court should set the affidavit's false assertions to one side and then determine whether the affidavit's remaining content is still sufficient to establish probable cause. If the affidavit is not sufficient, the warrant must be voided and the fruits of the warrant suppressed. 438 U.S. at 156, 98 S.Ct. at 2676. Essentially, *Franks* has been interpreted to mean that the false statements must be material to a finding of probable cause. *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir.1983).

■■■ *Franks* emphasizes the importance of truthful information to the neutral detached magistrate who must determine whether there is probable cause. *Id.* 438 U.S. at 165, 98 S.Ct. at 2681. The same kind of considerations are important to the district court whenever it must decide whether to issue a wiretap order. Therefore, although *Franks* dealt specifically with probable cause, its reasoning applies in this context as well. As a general rule, proof that law enforcement officials either lied or made reckless misstatements in affidavits to secure a warrant or order does not in and of itself invalidate that warrant or order, or compel suppression of evidence obtained upon its execution. But false statements that are material in causing the warrant to issue will invalidate it. Because the challenged statements in the wiretap application at issue deal with the "necessity" or "alternative methods requirement" for obtaining a wiretap, it is first necessary to determine whether necessity is an essential, congressionally warranted *requirement*, and not merely a factor meant to "inform the issuing judge of the difficulties involved in the use of conventional techniques." *United States v. Pacheco*, 489 F.2d 554, 565 (5th Cir.1974), *cert. denied*, 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975).

Title 18 U.S.C. § 2518(1)(c) provides that each application for a wiretap authorization shall include:

a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

Title 18 U.S.C. § 2518(3)(c) provides that in issuing a wiretap authorization order, the district court must determine whether:

normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

■■■ These two sections together make up the so-called necessity requirement for granting a wiretap order. The statutory language suggests that before finding that a wiretap is necessary, the court must find that alternative methods have been tried or would not have succeeded. *See United States v. Martinez*, 588 F.2d 1227, 1231 (9th Cir.1978) (necessity requirement meant to limit use of wiretaps because of their intrusive nature where traditional investigative techniques would suffice; necessity must be apparent from affidavit); *United States v. Spagnuolo*, 549 F.2d 705, 711 (9th Cir.1977) (district judge must have opportunity to exercise statutory role and must be given information as to alternative methods in order to determine if wiretap is appropriate). The necessity showing and finding are therefore material to the issuance of a wiretap order and are subject to *Franks*. *See United States v. Brooklier*, 685 F.2d 1208, 1221 (9th Cir.1982) (per curiam) *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983) (*Franks* hearing requirements should apply to § 2518 necessity determination).

### C. Materiality of False Statements

The district court found that although the government had tried some alternative methods of investigation, it had misled the issuing judge about the willingness of a particular informant to testify and about his ability to uncover evidence of the conspiracy using only conventional techniques. Therefore, it is necessary to evaluate the hypothetical effect of knowledge of the existence of a potentially useful informant on

the original district court's determination that a wiretap was necessary. If it would have no effect, then the misstatement would not be material.

■ Generally, the government must overcome the statutory presumption against granting a wiretap application by showing necessity. *See United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974); *United States v. Bailey,* 607 F.2d 237, 241 n. 11 (9th Cir.1979), *cert. denied sub nom. Whitney v. United States,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980). Such a showing must allege specific circumstances that render normal investigative techniques particularly ineffective or the application must be denied. *See United States v. Abascal,* 564 F.2d 821, 825–26 (9th Cir.1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *United States v. Kerrigan,* 514 F.2d 35, 38 (9th Cir.) (per curiam), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). The reason for requiring specificity is to prevent the government from making general allegations about classes of cases and thereby sidestepping the requirement that there be necessity in the particular investigation in which a wiretap is sought. The District of Columbia Circuit observed that:

> we must be careful not to permit the government merely to characterize a case as a "drug conspiracy" ... that is therefore inherently difficult to investigate. The affidavit must show with specificity why in *this particular investigation* ordinary means of investigation will fail.

*United States v. Robinson,* 698 F.2d 448, 453 (D.C.Cir.1983) (per curiam) (emphasis in original). Therefore, if, after the modification of the affidavit in this case, there is no longer the requisite specificity, suppression should be ordered.

■ Beyond the requirement of specificity, we have expressly adopted a practical and common sense approach in determining the sufficiency of government wiretap affidavits. *See Abascal,* 564 F.2d at 825; *United States v. Kalustian,* 529 F.2d 585, 589 (9th Cir.1975). Although law enforcement agencies need not exhaust all conceivable alternative procedures before resorting to a wiretap, the government must show, by a full and complete statement, and the issuing court must find, that "normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *United States v. Spagnuolo,* 549 F.2d at 710. In evaluating the showing of the government's good faith effort to use normal alternative means or its failure to use those means because of danger or a low probability of success, the reviewing court should use a standard of reasonableness. *Id.*

In the case before us, the government has tried certain alternatives, but has failed to pursue others that easily suggest themselves and are potentially productive and not unduly dangerous. Certainly one of the options of the issuing judge would have been to deny the application because necessity was not shown.

■ Although the government need not pursue every alternative means of investigation, neither should it be able to ignore avenues of investigation that appear both fruitful and cost-effective. It is not unreasonable to expect the government to utilize those methods that appear to be potentially productive. We would flout the statutory intent that wiretaps be used only if necessary, were we to sanction a wiretap simply because the government pursued some "normal" investigative strategies that were unproductive, when more fruitful investigative methods were available. In effect, the government would be able to secure a wiretap in every case, even where a normal strategy would be likely to achieve the same result without resort to the serious intrusion that a wiretap necessarily entails.

■ Applying the *Franks* analysis in this case, we must delete the falsity from the original affidavit (both paragraphs 118 and 119) and insert instead the finding of the reviewing court [1] that there was an informer who was both willing to testify and had great potential for uncover-

---

1. Although the *Franks* decision itself only delet- ed the false material in the affidavit, several

ing the entirety of the conspiracy under investigation.[2]

We conclude that a reasonable district court judge could have denied the application because necessity for the wiretap order had not been shown. Therefore, suppression was properly ordered.

Because of the result we reach, we need not decide whether we should affirm the decision for reasons of governmental misconduct alone.[3]

AFFIRMED.

Carlos ZULUAGA, Plaintiff-Appellant.

v.

UNITED STATES of America, Defendant-Appellee.

No. 84–6200.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1985.

Decided Oct. 29, 1985.

courts have recognized that *Franks'* reasoning should logically extend to material omissions, see *United States v. Dennis*, 625 F.2d 782, 792 (8th Cir.1980); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir.1980); see generally 2 W. La-Fave, *Search and Seizure* § 4.4 at 21–24 (1985 Supp.), though the Ninth Circuit has thus far reserved the issue. *United States v. Estrada*, 733 F.2d 683, 686 (9th Cir.), *cert. denied*, — U.S. ——, 105 S.Ct. 168, 83 L.Ed.2d 103 (1984); *United States v. Lefkowitz*, 618 F.2d 1313, 1317 n. 3 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980). If an affidavit can be challenged because of material omissions, the literal *Franks* approach no longer seems adequate because, by their nature, omissions cannot be deleted. One method would be to delete those technically true, though misleading, statements contained in the affidavit to which the omissions pertain. However, this approach may not always be effective, especially when the government omits an entire set of facts and it is unclear that they contradict any single statement in the affidavit but rather call the entire affidavit into doubt. (For example, an affidavit listing facts that might give rise to probable cause but omitting adverse facts would not make the individual alleged facts misleading in themselves.) A better approach, therefore, would be to delete false or misleading statements and insert the omitted truths revealed at the suppression hearing. *See Lefkowitz*, 618 F.2d at 1317 (omission immaterial because magistrate could have found probable cause even if truth was considered); *United States v. Martin*, 615 F.2d at 328 (if the defendant proves omissions were intentionally or recklessly made, court must "determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause. . . .")

2. Hanophy testified that he was willing to testify but was told that he should say he would not. Moreover, there is ample evidence in the record of the suppression hearing, and the reviewing district court found, that Hanophy had tremendous investigative potential and that he was not in danger. He was a former close associate of Ippolito, was involved in the plan to obtain a boat to move drugs from Colombia to the west coast, had been asked by Ippolito to run his operation, and had already met a couple of the members of the conspiracy and would probably meet more if he went to Colombia as requested by Ippolito. On the other hand, there was some evidence, though the reviewing district court found it unconvincing, that Hanophy was not completely trusted by Ippolito, that Hanophy would not have attained a high rank in the organization and that he consequently might be exposed to some danger. Yet, whether we adopt the district court's factual finding or whether we view the evidence as open to some interpretation, the result is unchanged because a reasonable judge could decide there was no necessity.

3. The result would be the same under the materiality test in which the court simply deletes the falsity and then determines whether the issuing court would still issue the wiretap order. Under this test paragraphs 118 and 119 would be deleted as misleading. The remainder of the affidavit describes the investigative techniques used by the government, states that they had not yielded adequate information and states further that the bulk of the government's information had come from informants. The affidavit would no longer contain the statements that the informants would not testify or that their continued use would not be effective. Under the reasonableness test of *Spagnuolo*, it would appear that while "normal" means of investigation have been tried, there is no showing that those means have been unsuccessful or that other means would be unlikely to be successful or too dangerous. Moreover, the eviscerated affidavit would now lack the showing of specific circumstances rendering normal investigative techniques ineffective. *See United States v. Abascal*, 564 F.2d 821, 826 (9th Cir.), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1977). Because the government would have failed to show that a wiretap was necessary after the false or true but misleading statements were deleted, suppression was warranted under *Franks*.