972 F.2d 1346
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth OWEN, Defendant-Appellant.
 Nos. 88-1361, 90-10544.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 20, 1991.
Memorandum withdrawn Aug. 5, 1992.
Decided Aug. 7, 1992.
 
 ORDER
 ALARCON, Circuit Judge.
 
 
 1
 The memorandum filed April 1, 1991, is hereby withdrawn.
 
 
 2
 Before ALARCON and T.G. NELSON, Circuit Judges, and PRICE* Senior District Judge.
 
 
 3
 MEMORANDUM**
 
 
 4
 Defendant's conviction stems from an investigation into the allegedly unlawful activities of members of the Hells Angels Motorcycle Club ("HAMC"), and particularly the Oakland Chapter of that organization. A key feature of this investigation was the use of a citizen informant Anthony Tait ("Tait") who was a national officer in HAMC. Tait was paid for his services as an informant.
 
 
 5
 Owen, a member of the Oakland Chapter of HAMC for over 20 years, was acquainted with Tait. On September 27, 1987, Tait visited Owen at his residence at 8306 Golf Links Road, Oakland, California. Tait was outfitted with a radio transmitter, which allowed the officials to tape Tait's meeting with Owen. During his visit, Owen offered Tait a "snort" of white powder from a bag. Tait then asked to purchase a pound of the material. Owen gave Tait an envelope containing approximately one pound of methamphetamine, which was later determined to be 100% pure. Owen instructed Tait to bring the agreed price to his woodshop that evening. This first meeting was not controlled, that is to say, Tait was not searched by the law enforcement officers before and after he contacted Owen; neither was his car.
 
 
 6
 The money from the above sale furnished to Tait by the Federal Bureau of Investigation ("FBI") was delivered by Tait to Owen at the woodshop, situated at 4010 Foothill Boulevard, Oakland. Tait was equipped with a radio transmitter and a tape was produced of this meeting. During this visit, Tait and Owen discussed the manufacture of methamphetamine in some detail. Owen explained to Tait the various facts about the process, displaying a familiarity with the details.
 
 
 7
 The second sale took place on October 18, 1987. Unlike the first sale, this sale was "controlled." Tait and his vehicle were searched before and after his meeting with Owen. In addition, the meeting was both audio taped and video taped.
 
 
 8
 The meeting occurred at Owen's residence, the site of the first sale. Tait arrived with the agreed purchase price which again had been furnished to him by the FBI. After receipt of the pound of methamphetamine, Tait handed Owen the money. Tait then asked Owen to give him another pound which he promised to pay for on Halloween. Owen agreed and gave Tait another pound.
 
 
 9
 Based upon knowledge gained during these two sales, application for search warrants were prepared and presented to the magistrate. The search warrants authorized the search of 8306 Golf Links Road, 4010 Foothill Boulevard, and 811 54th Avenue, Oakland, California. The latter address was a warehouse where the authorities believed that Owen manufactured methamphetamine. In addition to the events surrounding the two sales described above, the search warrant included information from Tait regarding other encounters with Owen; statements from a former HAMC member who allegedly had conspired with Owen; evidence of Owen's extensive experience in the manufacture of methamphetamine; and an officer's observation of the outside of the warehouse, including the sighting of a fully functional steam generator, which was attached to the warehouse. This apparatus was allegedly used in the manufacture of methamphetamine.
 
 
 10
 The warrants were executed on November 10, 1987. At 8306 Golf Links Road, Oakland, the searching officers seized approximately 21 pounds of methamphetamine, approximately one million dollars in cash, and over two hundred gold and silver coins. Owen was arrested at the premises.
 
 
 11
 At the woodshop situated at 4010 Foothill Boulevard, a smaller amount of methamphetamine was seized, but the search produced $500,000 in cash, gold coins, and chemical manuals.
 
 
 12
 At the warehouse situated at 811 54th Avenue, nine pounds of methamphetamine were seized, together with approximately one million dollars in cash. This sum included the ten thousand dollars that Tait had paid to Owen for the purchase made on September 27, 1987. In addition, equipment typically used in the manufacture of methamphetamine was seized. The searching officers also found a steam generator attached to the warehouse.
 
 
 13
 Owen was convicted of two counts of possession and distribution of methamphetamine based on his two sales to Tait. In addition, he was convicted of a third count of possession and distribution of methamphetamine based on the methamphetamine found in the warehouse.
 
 
 14
 Owen appeals from his conviction and from the trial court's denial of his motion for a new trial. Issues stated on appeal and discussed in order are:
 
 
 15
 1. The trial court erred in not granting Owen a Franks hearing;
 
 
 16
 2. The trial judge erred in failing to recuse himself;
 
 
 17
 3. The trial court erred by limiting cross-examination and excluding extensive evidence offered by Owen;
 
 
 18
 4. The trial court erred in failing to give the "mere presence" instruction;
 
 
 19
 5. The trial judge violated the Eighth Amendment by imposing the maximum sentence; and
 
 
 20
 6. The trial court erred in its failure to grant Owen a new trial.
 
 The Franks Hearing Issue
 
 21
 The Ninth Circuit has established the following five-prong test to gauge the sufficiency of a motion for a Franks hearing: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause. United States v. Kiser, 716 F.2d 1268, 1271 (9th Cir.1983) (Kiser ).
 
 
 22
 Owen attacks the affidavit presented for the search warrant of his residence at 8306 Golf Links Road on the following grounds:
 
 
 23
 1. The affidavit alleged, but the tapes did not reveal, that Tait asked for a pound of methamphetamine;
 
 
 24
 2. The tapes contained no reference to methamphetamine, except Owen's offer of a "snort;"
 
 
 25
 3. The affidavit alleged, but the tapes did not reveal, that Owen used a computer for business purposes;
 
 
 26
 4. The tapes did not record, as the affidavit alleged, that Owen instructed Tait how to purchase property in the name of others to avoid further seizure;
 
 
 27
 5. That the tape recorder did not function during the entire conversation;
 
 
 28
 6. That the affidavit did not reveal that the buy was not a controlled buy;
 
 
 29
 7. That the affidavit failed to inform the magistrate of the sordid background of Tait.
 
 
 30
 Items one through four, supra, are alleged statements in the affidavit which are false. Granting for the sake of argument that they are false, none of the statements are necessary to establish probable cause. It must be remembered that the object of the affidavit is to inform the magistrate that there is probable cause to believe that the products of criminal activity are present on the premises to be searched. The cases are clear that if the alleged false statements are disregarded, the question is; do the remaining facts constitute probable cause to issue the warrant? See United States v. Dicesare, 765 F.2d 890, 894-94 (9th Cir.1985); United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir.1985). Certainly, in this case there was plenty of information to issue the warrant, omitting the allegedly false material.
 
 
 31
 Items 5 and 6 are omitted items. In United States v. Condo, 782 F.2d 1502, 1506 (9th Cir.1961), the test is: including the omitted truths, is probable cause destroyed. Clearly it was not destroyed in this case.
 
 
 32
 Item 7 attacks the veracity of Tait, who was not the affiant. As we said in United States v. Perdomo, 800 F.2d 916, 921 (9th Cir.1986):
 
 
 33
 We have held that there are five requirements that must be satisfied before a defendant is entitled to a hearing under Franks:
 
 
 34
 (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; (5) the challenged statements must be necessary to find probable cause. (emphasis added)
 
 
 35
 Owen also attacks the affidavit for the search of the woodshop at 4010 Foothill Boulevard, Oakland on the grounds that Tait is inherently unreliable. As was pointed out above, the issue is not whether the informant is reliable, but whether the affiant accurately recounts what the informant told him.
 
 
 36
 Finally, with regard to the affidavit concerning the search of the warehouse, Owen again alleges that statements were made which were not true. Disregarding them, there was still sufficient facts to justify issuing the search warrant.
 
 
 37
 Owen's attack on the search warrant was based upon an affidavit of his then counsel, Mr. Serra. Mr. Serra's affidavit was based upon information and belief, and did not produce as exhibits the source of his information, or rely on hearsay statements. No direct evidence supporting Mr. Serra's statements was attached to the affidavits. This showing was in no sense a detailed offer of proof as required by Perdomo.
 
 
 38
 Since we review a request for a motion for a Franks hearing de novo, based on what we have before us the motion must fail. More importantly, we note that there was substantial information contained in the affidavit in support of the warrant which constituted a basis for a probable cause finding by the magistrate.
 
 
 39
 The Recusal Issue.
 
 
 40
 Early in the proceedings, Owen filed a motion to recuse trial by Judge Vukasin. The basis of the defendant's motion was the flawed relationship between the Judge and Mr. Serra. Nowhere is there a suggestion that Judge Vukasin was prejudiced against defendant Owen. As was stated in Clinton v. Union Pacific Railway Co. 813 F.2d 917, 921 (9th Cir.1987),
 
 
 41
 Personal bias, to require recusal or remand to a different judge, must be against the party, not against the attorney for the party. See United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985). See also 28 U.S.C. §§ 144, 455.
 
 
 42
 The Court's Failure to Give The "Mere Presence" Instruction.
 
 
 43
 Owen claims the trial court committed reversible error in connection with count four of the indictment, charging Owen with possession of twenty-one pounds of methamphetamine, which had been found in a locked red metal box in his garage at the Gold Links Road residence. The requested instruction reads as follows:
 
 
 44
 Mere presence at the scene of the crime and knowledge that a crime is being committed are insufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
 
 
 45
 The "mere presence" instruction proposed by Owen was an edited version of an instruction found in Devitt & Blackmar, Federal Jury Practice and Instructions, § 12.05 (3d ed. 1977), which applies to aiders and abettors. The district court found that there was no need to give this instruction because, "there were no facts in this case indicating a necessity for that instruction," and it would be "redundant and superfluous," in light of the instruction given on the elements necessary to find possession.
 
 
 46
 The district court instructed the jury that "the United States must prove beyond a reasonable doubt" that Owen "possessed methamphetamine" and that he "did so knowingly, and intentionally."
 
 
 47
 As appellant correctly points out, mere presence on premises where contraband is found is not sufficient to prove constructive possession. United States v. Chambers, 918 F.2d 1455, 1459 (9th Cir.1990). However, proof of control or dominion over property where contraband narcotics are found is a strong circumstance tending to prove knowledge of the presence of such narcotics and the control thereof, a requisite to a finding of possession. United States v. Rodriguez, 761 F.2d 1339, 1341 (9th Cir.1985).
 
 
 48
 As was pointed out in Loux v. United States, 389 F.2d 911, (9th Cir.1968). cert. denied 393 U.S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968), the critical issue in determining whether the instruction should be given is whether the jury is adequately
 
 
 
 *
 The Honorable Edward Dean Price, Senior District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3