**NOT FOR PUBLICATION**

# FILED

UNITED STATES COURT OF APPEALS

APR 20 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50029 |
| Plaintiff - Appellee, | D.C. No. 8:07-cr-00202-DOC-2 |
| v. | |
| GILBERT OLIVA DIAZ, AKA Chaparro, AKA Gilberto Oliva, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50052 |
| Plaintiff - Appellee, | D.C. No. 8:07-cr-00202-DOC-4 |
| v. | |
| ARTURO CRUZ, AKA Art, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-50058 |
| Plaintiff - Appellee, | D.C. No. 8:07-cr-00202-DOC-7 |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

ALBERTO HERNANDEZ, AKA Cruiser, AKA Sugar,

Defendant - Appellant.

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE GONZALEZ, AKA Black, AKA Negro,

Defendant - Appellant.

No. 10-50059

D.C. No. 8:07-cr-00202-DOC-5

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NOE GONZALEZ, AKA Lil Black,

Defendant - Appellant.

No. 10-50062

D.C. No. 8:07-cr-00202-DOC-6

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 10-50064

D.C. No. 8:07-cr-00202-DOC-9

MANUEL HERNANDEZ, AKA Frog,

        Defendant - Appellant.

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

JESSE VASQUEZ, AKA Pelon,

        Defendant - Appellant.

No. 10-50072

D.C. No. 8:07-cr-00202-DOC-1

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

FRANCISCO FLORES, AKA Lil Frank,

        Defendant - Appellant.

No. 10-50076

D.C. No. 8:07-cr-00202-DOC-8

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

   v.

LUIS A. AGUILAR, AKA Woody,

        Defendant - Appellant.

No. 10-50113

D.C. No. 8:07-cr-00202-DOC-23

| UNITED STATES OF AMERICA, | No. 10-50115 |
| Plaintiff - Appellee, | D.C. No. 8:07-cr-00202-DOC-16 |
| v. | |
| CESAR DELA CRUZ, AKA Thumper, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted November 2, 2015
Pasadena, California

Before: FARRIS, BYBEE, and N.R. SMITH, Circuit Judges.

This is a complex criminal case involving multiple defendants and claims, both joint claims and individual claims. Because the facts and proceedings are known to the parties, we do not discuss them here. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.[1]

---

[1] Defendant Vasquez's claim for a sentence reduction is addressed in a published opinion filed with this memorandum.

## I. MOTIONS TO SUPPRESS WIRETAPS

The defendants jointly challenge the validity of the wiretaps on Target Telephones #1–2, 4–6, and 10. They raise several challenges: (1) they argue that the government did not demonstrate necessity for each of these wiretaps, as required by 18 U.S.C. § 2518; (2) they argue that the affidavits supporting the wiretaps contained material misstatements and omissions that require an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978); (3) defendant Vasquez argues that the government also failed to show probable cause as to Target Telephone #10; and (4) defendant Vasquez argues that the district court committed reversible error in refusing to disclose certain *in camera* documents, and that these documents are needed to challenge the wiretaps on appeal. We reject each of these claims.

### A. *Necessity as to wiretaps*

In order to obtain a wiretap, the government must demonstrate "necessity" by showing that traditional investigative procedures: (1) were tried and failed; (2) reasonably appear unlikely to succeed if tried; or (3) are too dangerous to try. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005); *see also* 18 U.S.C. § 2518(1)(c) (requiring a wiretap application to include "a full and complete statement as to whether or not other investigative procedures have been

tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous"). We review de novo whether a wiretap order complies with § 2518 and is supported by the requisite full and complete statement of the facts. *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008). We review for abuse of discretion the district court's conclusion that the wiretap was necessary. *Id.*

Much of the record and briefing in this case related to the wiretaps has been filed under seal, and in some cases, filed ex parte. Thus, we must keep our discussion of the facts more general here in this publicly filed disposition. Nevertheless, the court has extensively examined the record and materials submitted in support of each wiretap, and is satisfied that necessity as to each of the challenged wiretaps was present, and that none of the affidavits submitted contained material misstatements or omissions that undermine the district court's necessity determinations.

For each wiretap, the government sufficiently demonstrated that it first pursued traditional investigative techniques before resorting to wiretaps. While the affidavits do contain some "boilerplate" language about the limits of physical surveillance, the affidavits also give case-specific reasons why traditional investigative techniques were not sufficient to accomplish the goals of the investigation, and what specific information the government sought from each

6

wiretap. *See, e.g.*, *Rivera*, 527 F.3d at 900 (finding necessity in a large drug conspiracy case where an affidavit provided "three case-specific reasons why . . . physical surveillance was particularly unlikely to be more successful"); *United States v. Garcia-Villalba*, 585 F.3d 1223, 1230 (9th Cir. 2009) (noting that use of some boilerplate language is not decisive).

Nor did the confidential informants used in this case defeat necessity as to any of the wiretaps. This court has repeatedly held that necessity is not defeated by the government's use of informants where the informants are unable to identify the full scope of a large conspiracy, and the affidavit supporting the wiretap sufficiently explains the information sought and the informants' limitations, as was the case here. *See, e.g.*, *Rivera*, 527 F.3d at 898–99; *United States v. Fernandez*, 388 F.3d 1199, 1236 (9th Cir. 2004); *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002). *Cf. United States v. Ippolito*, 774 F.2d 1482, 1484 (9th Cir. 1985) (finding that necessity was not present where an informant was able to uncover the entire conspiracy). Furthermore, the court is satisfied that, while the affidavits may have understated some of the information provided by the informants in this case, any omitted information was immaterial and does not undermine necessity.

Contrary to the defendants' claim, the district court did not misapply the law regarding necessity, but rather properly examined necessity for *each* of the challenged wiretaps. The district court correctly recognized that necessity must be analyzed in light of the complexity of the case and the complexity of the organization under investigation, discussing this court's precedents in, for example, *McGuire*, *Fernandez*, and *Rivera*.

B. Franks *hearing*

In addition to arguing that the challenged wiretaps were unnecessary, the defendants also argue that they are entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, defendants are entitled to a hearing to challenge the truthfulness of a government affidavit if they make a substantial preliminary showing that: (1) the affidavit omitted or misstated information material to the issuing judge's decision to issue the wiretap; and (2) the government either recklessly or intentionally made these omissions or misstatements. *Id.* at 155–56. An omission or misstatement is material if, looking to the affidavit with all omitted or misleading statements corrected, the issuing judge would have rejected the wiretap application. *Id.* at 156. We review the question of whether a false statement or omission is material to a finding of probable cause or necessity de novo. *Ippolito*, 774 F.2d at 1484.

8

The affidavits submitted in support of the wiretaps on Target Telephones #1–2, 4–6, and 10 generally contained full and complete statements of fact, and where information was omitted, it was not material. Moreover, there is little evidence the government either intentionally or recklessly omitted information from its affidavits. *See United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995) (noting that a "bare assertion that [an] omission . . . was deliberate 'because the . . . agents knew the truth and failed to include it in the warrant application,' does not establish that the omission was the result of anything other than negligence or innocent mistake"); *United States v. Tham*, 960 F.2d 1391, 1396 (9th Cir. 1991) (rejecting *Franks* hearing where the defendants "offered no proof that [an] omission was intentional or reckless"). The defendants are not entitled to a *Franks* hearing.

C. *Probable cause to tap Target Telephone #10*

In addition to the arguments regarding necessity, Defendant Vasquez argues that the government lacked probable cause to tap Target Telephone #10. To secure a wiretap order, the government must demonstrate: (1) probable cause that an individual has committed, is committing, or will commit an offense; (2) probable cause that communications regarding that offense will be intercepted through the wiretap; and (3) probable cause that the individual who is the focus of the

9

investigation will use the tapped phone. *United States v. Meling*, 47 F.3d 1546, 1552 (9th Cir. 1995) (citing 18 U.S.C. § 2518(3)(a)–(d)). We will uphold a district court's finding of probable cause where, looking at the four corners of the affidavit, there was a substantial basis to support probable cause. *Id.*

The affidavit submitted in support of the tap on Target Telephone #10 indicated that the subscriber of the phone line, Marisol Garcia (defendant Vasquez's wife), had previously been involved in F13's extensive narcotics trafficking operations, and before the wiretap was issued, was in frequent contact with individuals known to be actively involved in F13's current operations. On at least one occasion, Garcia discussed narcotics proceeds using coded language. "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). Based on the facts discussed in the affidavit, there is substantial evidence to support the district court's conclusion as to probable cause.

D. *Disclosure of* in camera *documents*

The government submitted a small number of *in camera* documents as part of its requests for the wiretaps in this case. The defendants raise several legal theories to argue that the trial court's failure to disclose these documents to them warrants suppression. None of these theories have merit.

We review the trial court's decision to withhold disclosure for abuse of discretion. *In re Copley Press, Inc.*, 518 F.3d 1022, 1028 (9th Cir. 2008). Defendants first argue 18 U.S.C. § 2518(9) required the trial court to disclose the documents. But this argument is foreclosed by *United States v. Forrester*, 616 F.3d 929 (9th Cir. 2010), in which we held that the government need not hand over all documents filed in support of a wiretap affidavit, so long as the withheld documents are not "essential to the validity of the warrant." *Id.* at 942. Here, none of the *in camera* documents were essential to the warrant; indeed, most of the documents contained little relevant information whatsoever. *See also United States v. Henderson,* 241 F.3d 638, 645 (9th Cir. 2000) ("To obtain disclosure, a defendant must show a need for the information . . . ."). This is particularly true given that defendants requested the documents in the context of a motion to suppress, and not in relation to the trial itself. *See McCray v. Illinois,* 386 U.S. 300, 307 (1967) (discussing lesser showing required for the government to withhold disclosure in the context of motions to suppress).

Defendants also contend they were entitled to these documents under the First Amendment, but this argument is also meritless. *See In re Copley Press, Inc.,* 518 F.3d at 1028 (holding that "the public has no First Amendment right to access the transcripts of the closed portions of . . . hearings on . . . motions to seal" or "the

11

declarations and documentation appended to the government's motion to seal and to the memoranda supporting that motion"); *Times Mirror Co. v. United States,* 873 F.2d 1210, 1212–16 & n.1 (9th Cir. 1989) (not reaching showing of necessity for sealing where court concluded public had no First Amendment qualified right of access to pre-indictment search warrant materials).

Further, to the extent the trial court erred in not disclosing the documents to defendants, its error was harmless. The court related the relevant substance of these documents to the defendants at an evidentiary hearing, so defendants were not prejudiced. Moreover, these documents contained almost no relevant information, and certainly would have made no difference to the outcome of the motions to suppress or the trial itself. The district court's failure to disclose the *in camera* documents does not warrant relief.[2]

## II. CASE ASSIGNMENT TO THE SOUTHERN DIVISION OF THE CENTRAL DISTRICT OF CALIFORNIA

For the first time on appeal, defendants argue that the Central District of California violated its own local rules by assigning their case to the Southern Division of the district, rather than to the Western Division. Courts have wide

---

[2] For the same reasons that we find the trial court did not err in refusing to unseal, we also deny Vasquez's motion, filed on May 14, 2012, to unseal these and similar documents.

discretion to interpret and apply their local rules. *Cortez v. Skol,* 776 F.3d 1046, 1050 n.49 (9th Cir. 2015); *United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir. 1989). In the context of assignments, courts are given wide latitude so long as an assignment is not made for an impermissible reason. *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987). Defendants are entitled to reversal when a district court violates a local rule *only* if they show they were *actually* prejudiced by the violation. *See United States v. Allen,* 633 F.2d 1282, 1294 (9th Cir. 1980) (holding no reversal warranted for court's violation of local rules because defendants could not show "actual prejudice"); *United States v. Torbert*, 496 F.2d 154, 157 (9th Cir. 1974) ("Having failed to show he was actually prejudiced by the failure to comply with the General Order, appellant is not entitled to reversal on that basis.").

Defendants have not shown that the Central District abused its discretion in assigning this case to the Southern Division, but even if they had, they have failed to show prejudice. Defendants argue we no longer require litigants to show actual prejudice to obtain a reversal where a court violates its local rules, citing to *Professional Programs Grp. v. Dep't of Commerce*, 29 F.3d 1349 (9th Cir. 1994). But this case refutes defendants' own argument. There, we held that reversal is only warranted where a court's violation of its local rules affects a litigants "substantial rights." *Id.* at 1353. And defendants have not articulated how any of

their substantial rights have been prejudiced by the Central District assigning their case to one internal division instead of another. The district court thus did not abuse its discretion in assigning this case to the Southern Division of its district.

### III. THE GOVERNMENT'S CLOSING REMARKS

Defendants next argue that the prosecutor made improper remarks that prejudiced their case. The government indeed made an improper remark during its initial closing argument, wrongly urging the jury to send a "message" by convicting defendants. But the defendants were not prejudiced.

When the government makes an improper statement to the jury, it bears the burden to "demonstrate that it is more probable than not that the error[] did not materially affect the verdict." *United States v. McElmurry*, 776 F.3d 1061, 1070 n.49 (9th Cir. 2015) (quoting *United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010)). The misconduct is "viewed in the entire context of the trial." *United States v. Ruiz,* 710 F.3d 1077, 1082 (9th Cir. 2013) (internal quotation omitted).

The government has met its burden. In the context of the entire trial, the improper statements were of little import. Defendants did not immediately object to the remark, and the district judge offered to give a curative instruction. The government's improper remark was brief, and made amidst six hours of closing statements. Further, the remark was not directed to the evidence itself. And

14

defense counsel were given the opportunity to address the remark in their own closing statements. Most importantly, the government's case was quite strong: multiple wiretaps were introduced where defendants inculpated themselves, percipient witnesses testified about the crimes, and other documentary evidence incriminated the defendants. *See United States v. Weatherspoon*, 410 F.3d 1142, 1151 (9th Cir. 2005) ("When the case is particularly strong, the likelihood that prosecutorial misconduct will affect the defendant's substantial rights is lessened because the jury's deliberations are less apt to be influenced."). The government's improper remarks were not prejudicial.

## IV. DELA CRUZ'S INDIVIDUAL ARGUMENTS

A.  *Fourth Amendment Claim*s

Dela Cruz first argues that a 2007 parole search of his home violated his Fourth Amendment rights. We review this claim de novo, *United States v. Delgado*, 545 F.3d 1195, 1200 (9th Cir. 2008), and reject it for two reasons.

First, Dela Cruz fails to establish prejudice. The only thing he asked to be suppressed in his motion before the trial court was "any and all evidence of the gun" that was seized. Yet a count predicated on a weapon was never sent to the jury, and Dela Cruz was consequently never convicted of any such crime. The charges for which Dela Cruz *was* convicted had nothing to do with the gun.

15

Accordingly, even if there were a Fourth Amendment violation, the error was harmless.

Second, Dela Cruz's Fourth Amendment claims fail on the merits anyway. Our precedent squarely forecloses Dela Cruz's argument that his parole agreement subjected him only to warrantless (as opposed to suspicionless) searches. *United States v. Lopez*, 474 F.3d 1208, 1213–14 (9th Cir. 2007), *overruled on other grounds by United States v. King*, 687 F.3d 1189, 1189 (9th Cir. 2012) (en banc) (per curiam); *see also United States v. King*, 736 F.3d 805, 806 n.3 (9th Cir. 2013). And Dela Cruz's attempt to characterize the California parole agents as mere "stalking horses" for a federal criminal investigation is similarly cut short by our case law. *See United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002). The trial court correctly denied Dela Cruz's motion in limine.

B.      *Foundation/Authentication Objection*

Dela Cruz's next contention is that the trial court erred when it held that Special Agent Starkey possessed sufficient familiarity with Dela Cruz's voice to identify it on numerous wiretaps for the jury. We review this claim for an abuse of discretion, *United States v. Chu Kong Yin*, 935 F.2d 990, 994 (9th Cir. 1991), and find Dela Cruz's argument wanting.

16

The bar for lay voice identification of this type is "low." *United States v. Ortiz*, 776 F.3d 1042, 1044 (9th Cir. 2015). The witness "need only be *minimally familiar* with the voice [she] identifies." *Id.* at 1044–45 (emphasis added) (internal quotation marks omitted). And this minimal familiarity, in turn, need only be "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(b)(5).

Although Special Agent Starkey was never directly asked about her familiarity with Dela Cruz's voice, the record shows that she clearly possessed such familiarity. Special Agent Starkey had listened to and transcribed all of the relevant calls. And later on in her testimony, she said that she had met Dela Cruz the day of his parole search arrest and heard him give his statements to the police. This was sufficient under Rule 901(b)(5). *See United States v. Plunk*, 153 F.3d 1011, 1023 (9th Cir. 1998) (hearing defendant's voice in post-arrest interview sufficient for later 901(b)(5) identification), *abrogated on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). The trial court properly admitted Special Agent Starkey's testimony.

C.    *Drug Conspiracy, RICO, and RICO Conspiracy*

Dela Cruz's final contention is to the sufficiency of the evidence of his drug conspiracy, substantive RICO, and RICO conspiracy convictions.  We review these claims de novo. *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010).

Review of a sufficiency claim on appeal proceeds in two steps.  First we view all "evidence presented at trial in the light most favorable to the prosecution," taking special care not to "usurp the role of the finder of fact" when faced with conflicting evidence.  *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).  Second, after reviewing this evidence, we will affirm if "*any* rational trier of fact" could have found "the essential elements of the crime beyond a reasonable doubt," even if we ourselves would not have convicted the defendant based on the evidence.  *Id.* (internal quotation marks omitted) (emphasis in original).  Under this standard, we affirm Dela Cruz's convictions.

First, we affirm Dela Cruz's drug conspiracy conviction.  To sustain this charge, the government bore the burden of proving "(1) an agreement to accomplish an illegal objective; and (2) the intent to commit the underlying offense." *United States v. Reed*, 575 F.3d 900, 923 (9th Cir. 2009) (quoting *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997)).  The government handily met its burden here.

The government put on significant evidence that F13 leaders regularly discussed the need to establish and maintain "drug spots" throughout F13 territory, that numerous F13 members established these "spots," and that only F13 members were permitted to sell within F13 territory. Then the government put on significant evidence that Dela Cruz was an active member of F13, had established two drug spots, routinely obtained distribution quantities of drugs from senior gang members, admitted twice that his job was "selling dope," and even had senior gang members offer to "front" him drugs when he got out of prison so that he could get back on his feet. Based on this evidence, a reasonable jury could conclude that Dela Cruz had at least an implicit agreement to distribute drugs in furtherance of F13's illicit goals, and intended to distribute those drugs. *See United States v. Mincoff*, 574 F.3d 1186, 1194–95 (9th Cir. 2009). The testimony of Dela Cruz's witnesses, emphasizing that he was merely a user, does not change this. The jury could have, for example, reasonably chosen to disregard this testimony and instead believe Dela Cruz's own admissions that he dealt drugs, thus defeating any argument that Dela Cruz was merely in a buyer-seller relationship. *See United States v. Rodman*, 776 F.3d 638, 644 (9th Cir. 2015). Dela Cruz's drug conspiracy conviction is supported by sufficient evidence.

Second, we affirm Dela Cruz's substantive RICO conviction. To sustain a substantive RICO charge under 18 U.S.C. § 1962(c), the government has to prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). The Supreme Court has held that RICO prohibits participation, "directly or indirectly, in the conduct of [a RICO] enterprise's affairs," and that the government must accordingly prove that the defendant has "*some* part in" the "operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993) (internal quotation marks omitted). This standard, however, specifically permits the conviction of "lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. The government presented sufficient evidence to meet these elements.

There is no doubt that Dela Cruz was an F13 member who at the very least "indirectly" participated in the "operation" of the F13 enterprise. The evidence of drug conspiracy shows just that. Moreover, the government put on sufficient evidence to show that Dela Cruz engaged in three specific racketeering acts, Acts 1 (conspiracy to distribute narcotics), 7 (possession with intent to distribute cocaine base), and 18 (use of a communication facility to facilitate narcotics distribution). These acts were "the same or similar [in] purpose[], results, participants, . . . [and]

20

methods of commission." *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989). Dela Cruz's substantive RICO conviction was amply supported by the evidence.

Finally, we affirm Dela Cruz's RICO conspiracy conviction. To prove a RICO conspiracy, the government needed to show that Dela Cruz "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Fernandez*, 388 F.3d at 1230 (alteration in original) (internal quotation marks omitted). But this does not require that Dela Cruz "actually conspired to operate or manage the enterprise" himself. *Id.*

A rational jury could have convicted Dela Cruz on this evidence. Based on Dela Cruz's participation in F13 and his numerous distribution-quantity buys, a jury could conclude that he was "aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.* (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). We accordingly affirm Dela Cruz's conviction for RICO conspiracy as well.

V.  CRUZ'S & A. HERNANDEZ'S INDIVIDUAL ARGUMENTS

A.  *Cruz's Conviction on Count 40*

Cruz argues, and the government concedes, that Cruz's conviction and sentence on both Counts 39 and 40 for possession of a firearm in furtherance of a

21

drug trafficking crime violate double jeopardy principles because they were both based on the same predicate conspiracy offense. The government also concedes this was plain error. We vacate Cruz's conviction on Counts 40, vacate his sentence, and remand for resentencing. *See, e.g.*, *United States v. Lira*, 725 F.3d 1043, 1044–45 (9th Cir. 2013); *United States v. Zalapa*, 509 F.3d 1060, 1064–65 (9th Cir. 2007); *United States v. Smith*, 924 F.2d 889, 894–95 (9th Cir. 1991).

A. Hernandez joins this argument, but there is no basis to say that his 18 U.S.C. § 924(c) convictions in Counts 36 and 40 were based on the same predicate conspiracy offense. A. Hernandez's conviction on Count 36 was based on a different predicate offense—the Count 11 assault charge—than was his Count 40 conviction (which was based on a drug conspiracy predicate offense). We accordingly affirm A. Hernandez's convictions on Counts 36 and 40.

B.     *Constructive Amendment of the Indictment*

Cruz and A. Hernandez both claim that the trial court constructively amended the indictment. They base this argument on inconsistencies and errors in the court's summation of the jury instructions and, in some instances, the instructions themselves. They never objected to these errors below, so they are subject to plain error review. *United States v. Fuchs*, 218 F.3d 957, 961 (9th Cir. 2000).

22

Generally speaking, constructive amendment of an indictment occurs "when the defendant is charged with one crime but, in effect, is tried for another crime," *United States v. Mancuso*, 718 F.3d 780, 792 (9th Cir. 2013) (internal quotation marks omitted), or in other words, when "(1) there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument, or [(2)] the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved," *United States v. Hui Hsiung*, 778 F.3d 738, 757 (9th Cir. 2014) (first and third alterations in original) (quoting *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002)). Cruz and A. Hernandez have failed to demonstrate any constructive amendment.

As to Counts 39 and 40,[3] the judge twice correctly told the jury that conspiracy to distribute was the relevant predicate offense to the § 924(c) charges, the jury took the indictment (which properly identified conspiracy to distribute as the predicate offense) with it to deliberate, the prosecution's closing argument on Count 39 identified the correct predicate offense, and the evidence presented was for conspiracy to distribute. Thus, despite the fact that when the trial court

---

[3] We note that Cruz's claim of constructive amendment of the indictment as to Count 40 is moot in light of our decision to vacate his conviction on that count.

23

instructed the jury it said that possession with intent to distribute was the relevant predicate offense, there is no credible claim that as to Counts 39 and 40 Cruz or A. Hernandez were charged with distribution predicate offenses but were actually tried for possession with intent to distribute predicate offenses.

As to Counts 22, 24, 25, and 26, A. Hernandez has not shown that he was essentially tried for crimes other than those listed in the indictment for these counts. The government's case was built around the specific drug types and quantities, as noted in the indictment. And whatever error the judge committed in describing the elements of Count 22 during a summary, it was remedied by the fact that the instructions were proper, and the evidence presented at trial focused on distribution, not possession with intent to distribute.

The trial court did not commit plain error here.

## VI. COLLECTIVE *APPRENDI* ARGUMENT

Defendants Dela Cruz, J. Gonzalez, N. Gonzalez, A. Hernandez, Oliva, and Vasquez argue that their sentence enhancements based on prior drug convictions violate the Sixth Amendment because the fact of prior conviction was found by the judge, rather than beyond a reasonable doubt by a jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). All defendants admit that this claim is foreclosed by Supreme Court precedent. *See id.*; *see also Alleyne v. United States*,

24

133 S. Ct. 2151, 2160 n.1 (2013*); Almendarez-Torres v. United States*, 523 U.S. 224, 239–240 (1998). We are bound by this precedent and thus reject the defendants' argument.

## VII. CONCLUSION

The district court's decision is AFFIRMED in all respects except we VACATE Arturo Cruz's conviction on Count 40, VACATE his sentence, and REMAND for resentencing. Appellant Jesse Vasquez's motion for judicial notice, filed on March 13, 2015, is GRANTED. Appellant Jesse Vasquez's motion to unseal documents, filed on May 14, 2012, is DENIED.